The CITIZENS ENVIRONMENTAL COUNCIL et al., Plaintiffs,

v.

John A. VOLPE, Secretary of Transportation, et al., Defendants.

Civ. A. No. T-5057.

United States District Court, D. Kansas.

Jan. 3, 1973.

Keith K. Couch, Overland Park, Kan., David Culp, Lawrence, Kan., William H. Tickett, Kansas City, Mo., for plaintiffs.

Robert Roth, U. S. Atty., Roger K. Weatherby, Asst. U. S. Atty., Topeka, Kan., James H. DeCoursey, Chief Atty., Paul W. Clark, Atty., State Highway Dept., State of Kan., Wright W. Crummett, City Atty., Overland Park, Kan., Ronald Baxter, Topeka, Kan., for defendants.

## MEMORANDUM OF DECISION

TEMPLAR, District Judge.

This action was instituted allegedly as a class action by Complaint filed November 23, 1971, in which plaintiffs seek a preliminary and permanent injunction restraining the construction of a relocation of approximately 2.7 miles of U.S. Route 69 in the cities of Overland Park and Lenexa in Johnson County, Kansas. This portion of the relocation is referred to by the parties as the "North leg" of the Switzer By-Pass. Also, mandamus is sought to compel an officer of the United States to perform his duty. 28 U.S.C. § 1361. The highway would be constructed on right-of-way acquired for that purpose more than eight years ago.

Neither party has requested the Court to determine whether this action should be maintained as a class action under Rule 23(c)(1). Perhaps such determination is not necessary, and though the Court entertains some doubts about the standing of some of the plaintiffs to maintain the action, other individual plaintiffs do appear to have sufficient interest for themselves and for those similarly situated, and having the right to make claims typical of those of whom it is alleged are representative of a class, the Court will, on its own initiative, determine that the action may proceed on a class basis. Johnson v. City of Baton Rouge, 5 Cir., 50 F.R.D. 295.

The Court further declares and finds that the representation of the class in this case is adequate to determine the issues involved and that further notice is not necessary to protect the interests of any other person who might be affected by the rulings or judgment in this case. Nor is such notice required. Northern Natural Gas v. Grounds, 292 F.Supp. 619 (Kan.D.C.).

Plaintiffs apparently base their claims generally on the following grounds:

1. No detailed environmental impact statement required by 42 U.S.C. § 4332(2)(C) has been prepared or submitted.

2. The provisions of 42 U.S.C. § 1857h–7 requiring review and comment by the Administrator of the Environmental Protection Agency have not been complied with.

3. The federal defendants have not provided for hearings required by 23 U.S.C. § 128, and Policy and Procedure Memo 20–8 (23 C.F.R. App. A).

4. No ruling has been made on whether or not the project conforms to the needs of the locality as required by 23 U.S.C. § 109.

5. The construction and use of the proposed highway will violate plaintiffs' rights under the Fifth Amendment, and the Ninth Amendment.

6. The use of the land now acquired for highway right-of-way violates 49 U.

S.C. § 1653(f) and 23 U.S.C. § 138, and the rules promulgated thereunder, because the right-of-way is used for a public park and recreational area.

A reading of the First Amended Complaint leaves the impression that the matter of plaintiffs' greatest concern is the last mentioned claim. It appears to be the most serious since it has received the greatest attention in the pleadings.

Jurisdiction exists under 28 U.S.C. § 1331(a), 28 U.S.C. § 1361, and 5 U.S.C. §§ 701–706.

Defendant John Volpe, Secretary of Transportation, is the public official charged with implementing the Federal-Aid Highway Program. The other federal defendants are: William D. Ruckelshaus, Administrator of the Environmental Protection Agency; and Robert Morrissey, Federal Highway Administration (F.H.W.A.) Division Engineer. The state defendants are: John D. Montgomery, Director of Highways for the State Highway Commission of Kansas; and Robert P. Hagen, Bob Kent, Henry Schwaller, Karl A. Bruek, Gale Moss, and Louis Kampschroeder, members of the State Highway Commission of Kansas.

Plaintiffs seek to halt the construction of a Federal-Aid primary highway within the Kansas City metropolitan area. The relief sought consists of an order temporarily and permanently enjoining the defendants from: 1) letting bids for the construction of the northern portion of the Switzer By-Pass, 2) continuing to approve or finance the northern portion of the Switzer By-Pass, and 3) releasing funds for the project.

Additionally, plaintiffs pray that defendant Ruckelshaus be ordered to make an independent investigation as to whether the Environmental Impact Statement required by 42 U.S.C. § 4332(2)(C) complies with the N.E.P.A.

Leave to intervene and to oppose the claims of plaintiffs was granted to the City of Overland Park and the City of Lenexa.

Plaintiffs were permitted to file an amended complaint on March 24, 1972, in which state officers were made parties defendant. Answers were filed by defendant state officers April 13, 1972, by defendant federal officers February 23, 1972, and by intervenor City of Overland Park May 12, 1972. This answer of Overland Park was adopted by the City of Lenexa.

The Court has heard arguments and has received evidence on October 25, 1972 and on November 29, 1972.

The state defendants have filed a motion for a protective order (Doc. 47), in which they assert that on October 12, 1972, the Kansas State Highway Commission (K.S.H.C.) was served with 107 pages of interrogations from plaintiffs and that this was done more than four months after the case was at issue in violation of Local Rule 14.[1] The objection of these defendants is well taken and the motion will be sustained. Plaintiffs have tendered no excuse for permitting this case to languish for months without any activity on their part, after the issues were made up when defendants' answer was filed April 13, 1972. Defendant state officials need not answer the 107 pages of interrogatories submitted.

Motions for summary judgment have been filed by the defendant state officers, by defendant federal officers, by intervenor City of Overland Park. Briefs have been submitted by all parties and by the Sierra Club and Johnson County Community Junior College, with the Court's permission as amicus curiae.

Plaintiffs, on November 29, 1972, requested leave to file within five days a proposed amendment to its first amended complaint. The proposed amendment has been presented. It seeks to add another cause of action to the amended complaint by alleging that defendants have failed to comply with the

---

1. In all civil cases, discovery procedures provided for in Federal Rules of Civil Procedure shall be completed by the attorneys within four months after the case is at issue. Rules of Practice of the United States District Court for the District of Kansas.

provisions of the Uniform Relocation and Assistance and Real Property Acquisition Policies Act of 1970. Plaintiffs allege that "certain members" of the class plaintiffs purport to represent are or will be displaced persons under the meaning of the Act (42 U.S.C. § 4601 et seq.). To support this proposed amendment are affidavits of four persons who speculate that their homes will "supposedly" be taken by the construction of the Switzer By-Pass. Defendants oppose the motion to amend. The motion to amend will be denied, First, because the claims of individual homeowners on this point do not present issues of law or fact common to the named plaintiffs who purport to represent a class and, Second, because the claims are speculative and consideration of individual claims will further delay the final determination of the case and may not properly be considered in this class action.

■■ The Court took under advisement the motions for summary judgment and has reviewed the evidence, the briefs, and has considered the background and the surrounding circumstances relating to the issues in the case. This Court has stated the rule to be followed in determining a motion for summary judgment in the case of Machinery Center v. Anchor Ins. Co., 10 Cir., 434 F.2d 1, 6. The Court may pierce the pleadings and determine from admissions and affidavits and evidence in the record whether material issues of fact actually exist. If they do not, summary judgment is appropriate. Again, under rule 56(d), the Court may ascertain what material facts exist without controversy and what facts are actually and in good faith controverted, and shall make an order specifying the facts without substantial controversy. See Baca Land Co. v. New Mexico, 10 Cir., 384 F.2d 701.

Plaintiffs argue that there are material facts in dispute which may not be resolved by a motion for summary judgment. Plaintiffs concede that a north-south trafficway is needed in the area but urge that the established project should be reconsidered. They also say that they do not complain about all the project but only the northern portion of it. Plaintiffs insist that a fact question remains as to whether the land acquired for use as a right-of-way is used as a park, whether an environmental impact statement should be required from defendant Ruckelshaus, whether there has been an abuse of discretion by the defendants, and whether the Court should require compliance with environmental impact determinations.

■ This is a proceeding in which equitable relief is sought. The individual plaintiffs who now complain about an invasion of their rights came into the area several years after the project was laid out and the right-of-way acquired. They and the developers of the land west of the By-Pass cannot be heard to say they were not aware of the existence of the contemplated By-Pass when they came into the community. Unless other considerations require this Court to grant relief, it should be said that the individual plaintiffs by coming to a laid-out highway with full knowledge of its existence and eventual construction have no rights in equity to be protected. One may not voluntarily come to a situation, already established, with knowledge of its existence and purpose, and later complain of its use to his inconvenience or detriment as long as the use is not unlawful.

Because of the several attacks leveled at this highway project by plaintiffs, an outline of facts disclosed by the record before the Court is appropriate.

The northern portion of the Switzer By-Pass is the relocation of approximately 2.76 miles of U. S. Route 69 in the cities of Overland Park, and Lenexa, Johnson County, Kansas. The project begins at the north edge of existing I-435 and the Switzer Road Interchange and extends north and west to existing I-35; Affidavit of Robert W. Morrissey, par. 6.

The proposed Switzer By-Pass originated in a comprehensive Kansas City

Metropolitan Area Origin and Destination Survey prepared in 1959 by Wilbur Smith and Associates for the State Highway Commission of Kansas and Missouri in cooperation with the United States Department of Commerce, Bureau of Public Roads; Affidavit of Morrissey, par. 6; Ex. A.

This study considered a number of factors. These were: (1) Traffic conditions in the Kansas City Metropolitan Area in 1957; (2) Origin and Destination Survey; (3) Characteristics of travel in 1957; (4) Future travel in the Kansas City Metropolitan Area in 1970–1980; (5) Traffic services of the proposed expressway system; and (6) Traffic volumes—capacity implications; (See Ex. A).

As part of this study, population trends, population growth, passenger car registration and ownership, and labor force-employment of Johnson County, Kansas, were specifically considered.

The Switzer By-Pass was included in both the suggested "A" and "B" system of Expressways; Ex. A. The corridor location, resulting from the planning study is depicted extensively in this survey. The by-pass is specifically discussed in relation to I–435, I–35, and as the relocation of U.S. 69; Ex. A, pp. 141, 142, 143.

The corridor location was determined prior to the urbanization of this part of the Kansas City Metropolitan Area, and selected with the expectation that the project area would become increasingly populated in the future, and eventually become densely populated; Affidavit of Morrissey, par. 7; see generally Ex. A.

On April 2, 1959, pursuant to 23 U.S. C. § 128(a) The Kansas State Highway Commission conducted a public hearing at Olathe, Kansas, to discuss the proposed By-Pass. The general hearing requirement of 23 U.S.C. § 128(a) was specifically implemented in F.H.W.A. Policy and Procedure Memorandum (PPM) 20–8 issued August 10, 1956; Ex. B. This PPM was supplemented by PPM 20–8, issued June 16, 1959. PPM 20–8, issued January 14, 1969, (Ex. C) superseded the earlier PPM's. The hearing informed the public of the general location and alternate routes, and provided an opportunity for comment on the proposal. Design features were discussed, an evaluation of economic aspects conducted, and advice given to landowners who might be in the right-of-way; see generally, Ex. D; and Affidavit of Morrissey, par. 18(b).

The hearing record includes many examples of the knowledge by State Highway officials that the area in Johnson County through which the by-pass would travel was a fast growing area, developing, or becoming built up, and that subdivisions would develop in the area; Ex. D, 8–9, 13, and 19.

In accordance with 23 U.S.C. 128(a), the State Highway Commission, on May 20, 1959, transmitted a copy of the transcript of the public hearing (Ex. D) to the Division Engineer, F.H.W.A.

Right-of-way acquisition by the State occurred during 1962–1964. Studies of the area at this time indicated the potential development of commercial and residence sites and eventually a dense population; Affidavit of Morrissey, pars. 7 & 8; Ex. A. Right-of-way acquisition prior to the development of the area was important in reducing acquisition costs; Affidavit of Morrissey, pars. 7 & 8. The land acquired has remained underdeveloped; Affidavit of Morrissey, pars. 11 & 12.

The State Highway Commission adopted a resolution on August 12, 1959, to request the Bureau of Public Roads add the by-pass route to the Federal-Aid Primary System. On August 19, 1959, this resolution was transmitted to the Division Engineer. That same date, the Division Engineer forwarded this request to the Regional Engineer. In a memorandum to the Division Engineer, dated August 24, 1959, the Regional Engineer stated that:

"[T]his short length appears to be a desirable addition to the Primary System, and it will perform a definite

service between Interstate Routes 35 and 435."

The Division Engineer notified the State Highway Commission on August 26, 1959, that the proposed addition was approved for addition in the Federal-Aid primary system; see Ex. E–1 through E–6.

On March 5, 1962, the Division Engineer approved the State Highway Commission's request to acquire the necessary right-of-way; Ex. F. Later, on July 2, 1964, the Highway Commission certified that the necessary right-of-way had been acquired in accordance with all applicable federal laws and regulations; Ex. G.

Subsequent to the foregoing approvals, Congress passed the National Environmental Policy Act of 1969 (N.E.P.A.), 83 Stat. 852, 42 U.S.C. 4321 et seq. The effective date of this Act was January 1, 1970.

Section 102(2) of that Act provided that all agencies of the Federal Government shall ". . . include in every recommendation or report on proposals for . . . major Federal actions significantly affecting the quality of the human environment, a detailed statement . . ." discussing the environmental effect of the proposed action; 4332(2)(C).

The Council on Environmental Quality issued Interim Guidelines for preparation of the 102(2)(C) Environmental Impact Statement on April 30, 1970; 35 F.R. 7390; Ex. H. These Guidelines provided in paragraph 10(b) for a two step procedure involving the circulation of a "draft" statement assessing in detail the potential environmental effect of the proposed project. The Final Guidelines issued on April 23, 1971, 36 F.R. 7724 (Ex. I), do not vary from the two step procedure suggested by the Interim Guidelines.

To implement the N.E.P.A. and the C.E.Q. Guidelines, the Department of Transportation issued D.O.T. Order No. 5610.1 on November 10, 1970; Ex. J.

The suggested two statement procedure was contained therein; Ex. J, par. 7d & 7h. In line with this directive, the F. H.W.A., on November 30, 1970, issued a draft Instructional Memorandum titled Interim Guidelines for Implementation of Section 102(2)(C) of the National Environmental Policy Act of 1969; Ex. K. This I.M. required the preparation of an Environmental Impact Statement for projects receiving design approval after February 1, 1971; Ex. K, par. 4. Subsequently, on August 27, 1971, PPM 90–1 superseded the Instructional Memorandum with respect to N.E.P.A. implementation; Ex. L. Accordingly, on March 4, 1971, a draft statement was issued soliciting comments from appropriate federal agencies on the environmental effects of the proposed project; Ex. M. The Environmental Protection Agency was requested to comment; Ex. M. The comment was issued on April 6, 1971; Ex. M.

On March 31, 1971, the Metropolitan Planning Commission, Kansas City Region, reported to the State Highway Commission that the proposed highway was in agreement with the Freeway and Expressway Plan adopted by the Planning Commission; Ex. N. Copies of the Freeway and Expressway Plan adopted by the Planning Commission and the Highway Commission of both Kansas and Missouri were furnished F.H.W.A. on April 16, 1971; Ex. O. This plan contained the Switzer By-Pass Project. The Kansas City Region Regional Plan, prepared and accepted by the Planning Commission lists the Switzer By-Pass among those projects considered to be "first or top priority" and a "committed" project; Ex. P.

The amended PPM 20–8, Ex. C issued January 14, 1969, required two public hearings, a corridor hearing and a design hearing; see par. 6a. As the Highway Commission had previously conducted a corridor hearing on August 2, 1959, only a design public hearing was held thereafter.

The design hearing, considering the specific location, major design features, relocation, and economic, social, and environmental effects of the proposed highway, was held at Overland Park, Kansas, on April 23, 1971; Ex. Q. A transcript of the hearing was forwarded to the Federal Highway Administration.

The Final Environmental Impact Statement, with attached comments (Ex. R), was filed with the Council on Environmental Quality on August 18, 1971, and accepted by the Federal Highway Administration on August 26, 1971; Ex. S. The comment of Defendant William Ruckelshaus, Administrator, Environmental Protection Agency, dated April 6, 1971, was included in the attachments to that statement.

On October 29, 1971, the State issued a Study Report For Design Approval, Ex. T. This report analyzed design alternates and provided design recommendations for each of the major design features of the proposed project. The report at page 1 stated:

"The anticipated social, economic, and environmental effects are reflected by the Final Environmental Statement. This Statement shows that the goals and objectives of the urban plan as generally adopted by the overall community are compatible with this recommended design."

Design approval for the project and authorization to complete plans, specifications and estimates were given on November 16, 1971; Ex. U.

Environmental considerations were a significant factor bearing upon the location and final design features of the project; Affidavit of Morrissey, pars. 10–16 Exs. R & T.

William Ruckelshaus, Administrator, Environmental Protection Agency, issued a comment on the Final Environmental Impact Statement on May 4, 1972; Ex. V.

Plaintiffs filed this suit on November 23, 1971, seeking to enjoin construction of the proposed Switzer By-Pass.

Stripped of a great deal of verbiage, the amended complaint alleges, in substance, that the Environmental Impact Statement (E.I.S.) fails to comply with the requirements of 42 U.S.C. §§ 4331 and 4332, because the conclusions therein stated do not constitute independent determinations by the Department of Transportation (D.O.T.), but merely reflect the opinions of defendants John B. Montgomery and K.S.H.C., two proponents of the project. The further contention is that defendant Ruckelshaus, Administrator of the Environmental Protective Agency (E.P.A.) did not review the statement and comment in writing on the environmental impact of the matter to which 42 U.S.C. § 4332(C) applies and make such comments public. It is claimed that he also failed to make an independent investigation and determination of the environmental impact of the project and that his failure to so act was arbitrary and capricious, and prevented the reference of the project to the Council on Environmental Quality for further review. It is also alleged that requirements of the acts referred to apply to highway projects such as the northern leg of Switzer By-Pass.

The record discloses that E.I.S. was prepared by the K.S.H.C. in cooperation with the F.H.W.A., the D.O.T. and other agencies of the federal government. Highway construction programs are carried out in most instances, certainly in this one, and are required to be carried out by the joint development and execution of highway programs. 23 U.S.C. § 101 et seq. The N.E.P.A. expressly provides that the Act shall not affect statutory obligations of any agency to coordinate or consult with any other federal or state agency. The preparation of E.I.S. by the K.S.H.C. in cooperation and consultation with F.H.W.A., is consistent with the intent of Congress. When consideration is given to the procedures re-

quired to plan and establish a highway project and then apply for federal aid to pay for it, the necessity for an early E.I.S. statement by the K.S.H.C. at an early stage of the proceeding is apparent.

Both the C.E.Q. Interim Guidelines, issued April 30, 1970, 35 F.R. 7390 (Ex. H), and the Final Guidelines, issued April 23, 1971, 36 F.R. 7724 (Ex. I), permits K.S.H.C. to prepare the Environmental Impact Statement subject to review and acceptance by F.H.W.A. officials. The only requirement that a draft Environmental Impact Statement be circulated for comment is found in Section 7 of the C.E.Q.'s Guidelines:

"A Federal agency considering an action requiring an environmental statement, on the basis of (1) a draft environmental statement for which it take responsibility or (2) comparable information followed by a hearing subject to the provisions of the Administrative Procedure Act, should consult with, and obtain the comment on the environmental impact of the action of, Federal agencies with jurisdiction by law or special expertise with respect to any environmental impact involved."

The draft E.I.S., therefore, is in essence an administratively created device for facilitating consultation with appropriate agencies. Nothing in the guidelines requires that the draft statement be prepared in the first instance by the federal agency responsible for the proposed action. The only requirement set forth in C.E.Q.'s Guidelines is that the federal agency "take responsibility" for the draft statement which is circulated.

Moreover, Section 2 of the final Guidelines provide:

"2. *Policy.* As early as possible and in all cases prior to agency decision concerning major action or recommendation or a favorable report or legislation that significantly affects the environment, Federal agencies will, in consultation with other appropriate Federal, State and local agencies, as-

sess in detail the potential environment impact in order that adverse effects are avoided . . . ."

The Interim Guidelines, Section 2, contained substantially similar wording. Thus, both the Interim and final Guidelines emphasized that state and local government units were to be drawn into the F.H.W.A. administrative process so as to assess in detail the environmental impact of the proposed action to be taken. This consultation to "assess in detail" by state and federal agencies acquires added significance when considered in the light of the unique F.H.W.A.—state relationship, 23 U.S.C. § 101 et seq. Section 3(d) of the final Guidelines stated:

". . . It is imperative that existing mechanisms for obtaining views of Federal, State, and local agencies on proposed Federal actions be utilized to the extent practicable in dealing with environmental matters."

The Interim Guidelines contained similar wording in Section 2.

Both the F.H.W.A. draft Instructional Memorandum titled "Interim Guidelines for Implementation of Section 102(2)(c) of the National Environmental Policy Act of 1969" (Ex. K), issued November 24, 1970, and PPM 90–1, (Ex. L, par. 6 b & i), issued August 24, 1971, which superseded the I.M. with respect to N.E.P.A. implementation, required that the State Highway Commission prepare the draft and final Environmental Impact Statements.

It appears from the public interpretations made by the Chairman of the Council on Environmental Quality (C.E.Q.) that the agency has likewise accepted this procedure. (See testimony of Russell E. Train, pp. 261 and 263, Ex. X, "Red tape—Delays and Excessive Paper Work in administration of the Public Works Program.")

When considered in the light of the provisions and requirements of the Federal-Aid Highway Act, the interpreta-

tions by D.O.T. and F.H.W.A. of the N.E.P.A. and C.E.Q. Guidelines countenancing state participation in preparation of E.I.S., the procedures in this case do not appear clearly erroneous and should be accepted as reasonable and practical, if not, in fact, necessary, if any substantial development of transportation facilities is to be carried on in this country.

Plaintiffs predominate purpose in maintaining this action, judging by the emphasis placed on this issue by them in the record, is to somehow require the use of a strip of land, acquired several years ago for highway purposes, for a public park and recreational area. They base their claim in this regard on the provisions of 49 U.S.C. § 1653(f) and 23 U.S.C. § 138, and regulations promulgated thereunder.

Neither of the statutes apply to the situation before the Court in this case. The land acquired for highway right-of-way was not taken from publicly owned land used as a public park, recreation area, or wildlife and waterfowl refuge of national, state or local significance, as determined by federal, state or local officials having jurisdiction thereof. The right-of-way in this case, as revealed by the record, was acquired from private owners of many tracts of land.

Also, it appears that the City of Overland Park, through which the largest segment of the right-of-way exists, has a City Park Department and has established a City Park System as it is authorized to do. The undisputed evidence is that the By-Pass right-of-way was never included in the City Park System, was never intended to be and that other and more practical and appropriate recreational facilities are being constructed in the neighborhood for the benefit of those who live thereabout; Affidavit of Larry Flatt, Doc. 51.

Since the right-of-way has never been designated for use as a public park or recreational area, the laws relied upon by plaintiff do not apply and their claim may not be sustained. Penn. Environmental Council v. Bartlett, 454 F.2d 613 (3 Cir.).

It ought to be observed that the record discloses the careful study and planning for this By-Pass Project by a number of city, state, federal and metropolitan agencies. Public hearings and discussions were held over a period of fourteen years to consider the need, the advisability and the feasibility of this By-Pass. The officers of the cities, the county, the state, the federal government have studied and approved its establishment. A great deal of public money has been appropriated and spent to establish the By-Pass which all the public officials charged with the responsibility of doing so have approved. A Community College, accommodating several thousand students in the area, was located and built with the construction of this By-Pass a major factor in arriving at a choice of location. Zoning ordinances and programs of community development have been established relying upon the eventual construction of this By-Pass to facilitate the movement of traffic and accommodate the great majority of people whose interests and welfare are more than equal to the class allegedly represented by plaintiffs. To enjoin the construction of this highway after twelve years of effort to obtain it because a relatively few persons wish it to be used as a recreational area, is neither reasonable, practical nor equitable. There must come a time, after the passage of years, when a needed public improvement, such as this one, ought to be built.

After considering all the numerous contentions of plaintiffs, the Court, after threading its way through the provisions of several legislative acts and regulations adopted thereunder, all of which, it should be assumed, were purposely enacted or promulgated to be reasonably and sensibly applied,[2] must

---

2. See National Forest Group v. Volpe, D.C.Mont., 1972, 352 F.Supp. 123.

find and determine the environmental impact statement required by 42 U.S.C. § 4332(2)(C) has been prepared and submitted by F.H.W.A., that the provisions of 42 U.S.C. § 1857 requiring review and comment by defendant Ruckelshaus, as administrator of E.P.A., have been observed to the extent required by the statute as its application is interpreted and applied by the responsible administrators of the Council on Environmental Quality.

The Court further finds and determines that the record before it shows conclusively that hearings required by 23 U.S.C. § 128 and Policy Procedure Memo 20-8, have been provided and that a determination has been made that the project conforms to the needs of the locality as required by 23 U.S.C. § 109.

The Court must also conclude that no constitutional rights of plaintiffs have been violated. They came to a project already announced and for which right-of-way had been acquired. Having done so, none of their constitutional rights could be violated.

The contention that the land acquired for a highway right-of-way should be used as a public park and recreational area is without merit.

After careful scrutiny of the voluminous record before it, and after considering the circumstances and interests of all the parties, the delay by plaintiffs in prosecuting their case, and the common-sense application by the administrators of the several governmental agencies in carrying out the mandates of Congress, this Court concludes that the pleadings in this case should be pierced and the actual issues determined. In doing so, it is now found that no material issue of fact exists and that the case is ripe for disposition by summary judgment.

It is therefore the ruling and order and judgment of this Court that the motions of the defendants and the intervenors for summary judgment, be, and they are, sustained, and plaintiffs' action is dismissed.