**FINISH ALLATOONA'S INTERSTATE RIGHT, INC.**, also known as "Fair," a corporation for civil and non-profit purposes, and **Richard L. Fullerton**,

v.

**John A. VOLPE** as Secretary of Transportation of the United States of America, and **Bert K. Lance** as Director of the Georgia Department of Transportation (formerly the State Highway Department).

Civ. A. No. 17133.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 14, 1973.

Hugh G. Head, Jr., Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Marion O. Gordon, Asst. Atty. Gen., Atlanta, Ga., for Lance.

John W. Stokes, Jr., U. S. Atty., Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for Volpe.

## ORDER

O'KELLEY, District Judge.

On November 28, 1972, the above-styled case was tried before the Court sitting without a jury. Having considered the evidence presented by the parties, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

The plaintiffs filed suit in September, 1972, seeking to enjoin the construction of Interstate Highway 75 (hereinafter I-75) in the vicinity of Lake Allatoona. I-75 is a major interstate highway connecting the southeastern states with those of the midwest, and it traverses a north-south axis through the state of Georgia. The highway is complete and open to traffic within the state of Georgia except for a 24-mile segment in the vicinity of Lake Allatoona.

Lake Allatoona is a lake which is owned and operated by the Corps of Engineers as a flood control, hydroelectric, and recreational facility.

Since 1956, a number of proposals for the construction of an interstate highway in the Lake Allatoona area have been studied. Eight such alternative highway systems have been studied by the State Department of Transportation in the last seven years.

The State originally proposed to construct the highway so that it crossed the central portion of Lake Allatoona. That route, designated as Line "F" was the subject of a public hearing conducted by the State Department of Transportation in 1965. Line "F" was later submitted to the Federal Highway Administration, but it was not approved by that agency.

The State subsequently submitted Line "T" to the Federal Highway Administration. That route represents a combination of the southernmost portions of Line "F" and a new alignment which avoids crossing the central portions of Allatoona.

Prior to the approval of the location of I-75 along Line "T," the State, with the assistance of state, federal, and private agencies, prepared a comprehensive environmental impact statement. The impact statement includes in depth reports by an acoustical engineering firm, the National Recreation and Park Association and an interdisciplinary study by the Georgia Institute of Ecology at the University of Georgia. In addition, the Secretary of Transportation prepared a detailed report treating various alternatives for the location of I-75. In that regard, the Secretary concluded that feasible and prudent alternatives to Line "T" did not exist. The Secretary also suggested specific design measures intended to minimize harm to the environment.

The Georgia Conservancy, a state-wide organization having approximately 5000 members dedicated to the promotion of conservation of natural resources, often issues statements on issues of ecological significance. The Georgia Conservancy publicly stated that it felt that Line "T" was the most feasible route through that area, and it urged its adoption as the one route which would do the least damage to the environment and still adequately serve traffic needs.

Richard Fullerton, the named plaintiff herein, as well as, the president of the corporate plaintiff, Finish Allatoona Interstate Right, Inc. (hereinafter FAIR), holds a Bachelor of Arts degree, as well as, a graduate degree in theology, and he has been a preacher at the Church of the Nazarene. He has studied automotive engineering at the General Motors Institute, and he has been involved in the development and construction of church buildings and church-related housing for senior citizens. In 1970, Mr. Fullerton became interested in the construction of this highway, and he began doing research and study on the project at that time. On

February 19, 1972, Fullerton sent a telegram to Secretary Volpe suggesting alternatives to Line "T." As alternatives, he mentioned "Line 'G,' upgrading U.S. 41, cutting below McCullom Airport and west of 41, or simply straightening their Line 'G.' . . ." No specific mention of the route proposed by the plaintiffs in this case, FAIR Line 1, was made at that time although FAIR Line 1 does run south of McCullom Airport and west of U.S. 41.

No copy of this telegram was ever sent by the plaintiffs to defendant Lance, to any other person in the State Department of Transportation, or to any federal official other than Volpe.

FAIR Line 1 is the route recommended by the plaintiffs as a feasible and prudent alternative to Line "T." FAIR Line 1 follows more closely the highway corridor of U.S. 41 and indeed crosses that highway at two major crossings. FAIR Line 1 would cross Allatoona and would involve the taking of some parkland area. This route as now proposed was not brought to the attention of the State Highway officials or to the United States Department of Transportation until the complaint was filed in September of 1972, and FAIR Line 1 was not one of the alternative routes studied by the State or Federal highway agencies. The plaintiffs have not conducted feasibility studies for the construction of FAIR Line 1.

Copies of property deeds show property in the vicinity of Line "T" purchased since 1968 by the following individuals: (1) Terminal Facilities, Inc.—Stockholders include Mrs. Herman Talmadge, C. S. Hooks, Jimmy Bentley, J. A. Cochran and others; (2) Otis L. Brumby, Jr.; (3) Melville W. Kinney, Jr.; (4) Jack Henderson; (5) Harold Wellingham; (6) Harry W. Livingston, Jr.; (7) John W. Davis; (8) Mrs. Otis A. Brumby, Sr.; (9) H. L. McDaniell; and (10) A. L. Burruss. There is no evidence to show that any of these people improperly influenced or attempted to influence highway decisions by State or Federal officials.

In 1957, O. C. Hubert, the major financial contributor to FAIR was deeded portions of Land Lots 74, 75, and 78 of the 20th District and 2nd Section of Cobb County, Georgia. FAIR Line 1 traverses these land lots.

There has been at least one minor modification of Line "T" during the design engineering phase which has taken place since Line "T" was approved by the Secretary of Transportation.

## CONCLUSIONS OF LAW

By this action, the plaintiffs seek to enjoin the construction of Highway I–75 from Bells Ferry Road northwesterly through portions of Cobb County, Georgia, across Lake Allatoona and a portion of its surrounding parklands to Bartow County. They base their action on the contention that defendants Volpe and Lance have conspired to spend federal funds to construct this portion of I–75, Line "T," in violation of Section 4(f) of 49 U.S.C. § 1653(f), as amended, and 23 U.S.C. § 138 (Supp. V, 1970). Jurisdiction is claimed under the Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States; the Federal-Aid Highway Act, as amended, 23 U.S.C. § 101 et seq.; The Clean Air Amendments of 1970, P.L. 91–604, 84 Stat. 1676; The Department of Transportation Act, as amended, 49 U.S.C. § 1651; 28 U.S.C. §§ 1331, 1337, 1343; and 5 U.S.C. §§ 701–706.

The pertinent sections of 49 U.S.C. § 1653(f) and 23 U.S. § 138 require that the Secretary of Transportation not approve a transportation project which requires the use of any publicly owned land from a public park, recreation area, or wildlife refuge of national, state, or local significance unless, (1) there is no feasible and prudent alternative to the use of such land, and unless (2) such program includes all possible planning to minimize harm. In the instant case, I–75 has been completed in Georgia except for the 24-mile segment in the vicinity of Lake Allatoona. To close this gap, the State and Federal agencies involved studied approximately a dozen possible

routes as well as the alternative or doing nothing at all to close the gap. The first route selected by the State (Line "F") was submitted to the Secretary of Transportation and rejected. A new route, Line "T," was then selected by the State and an environmental impact study made. This plan was subsequently submitted to defendant Volpe for his consideration. Having determined that the land and water areas in the Lake Allatoona area were subject to Section 4(f) of the Department of Transportation Act of 1966, Volpe made an extensive study of Route "T," as well as, other possible alternatives and concluded in a written report that feasible and prudent alternatives for the construction of I–75 did not exist. In that report, he also included specific design measures to be employed so as to preserve areas adjacent to the highway and to minimize harm to recreational areas.

■ The Supreme Court has held that the standard of review to be used by the Courts in reviewing a decision of the Secretary of Transportation is a narrow one. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The Court is not empowered to substitute its judgment for that of the agency, but rather only to review the Secretary's findings to determine if all necessary procedural steps were followed and to make certain that the resulting administrative decision was not arbitrary or capricious. *Id.* In the instant case, the record and the evidence presented at trial indicate that a careful study was made with regard to the construction of I–75 in this area. It is apparent that both State and Federal defendants considered the relevant factors applicable to several alternative routes, and that as a result of this study, the Secretary determined that feasible and prudent alternatives did not exist. Furthermore, the record reflects that a significant amount of planning and study has been devoted to minimizing harmful effects of this route, and that the Secretary determined that when the suggested design mea-

sures were employed, all possible attempts will have been made to minimize harm to the environment. The Court is of the opinion that the Secretary's decision reflects no clear error of judgment, and, therefore, should be affirmed.

■ Furthermore, it is this Court's determination that all necessary procedural steps were followed by the State and Federal agencies involved. For federally assisted projects, compliance with the National Environmental Policy Act (hereinafter NEPA) requires a detailed statement treating the following:

"(i) The environmental impact of the proposed action,

"(ii) Any adverse environmental effects which cannot be avoided should the proposal be implemented,

"(iii) Alternatives to the proposed action,

"(iv) The relationship between local short-term uses of mans' environment and the maintenance and enhancement of long-term productivity, and

"(v) Any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." 42 U.S.C.A. § 4332(C).

A review of the final environmental impact statement in the instant case wholly refutes the plaintiffs' contention that a detailed study was not made. The impact statement herein represents a comprehensive collection of environmental data as well as exhaustive analyses of that data. The Administrative Record further reveals that the environmental impact statement properly accompanied the advancement of this project through each step of the administrative process. NEPA requires that environmental impact be assessed and that the assessment be available to the decision makers involved. Both requirements appear to have been fully met.

■ The plaintiffs herein also contend that the duty to make the environmental impact statement was improperly

delegated by the U.S. Department of Transportation to the Georgia State Highway Department. The Court cannot agree with this contention. The final environmental impact statement herein was prepared by the State Highway Department in consultation with state, federal, and private agencies. The impact statement includes in depth reports by an acoustical engineering firm, The National Recreation and Park Association, and a study by the Georgia Institute of Ecology. Furthermore, it contains the concentrated analysis of a study team in the Federal Highway Administration. The record is clear that the Secretary did not merely rubber stamp the State's work, but rather reviewed, approved and adopted the statement, thus making it his own. It is this Court's opinion that such a procedure is in harmony with the purposes of the statutory requirements and goals of NEPA. See Iowa Citizens For Environmental Quality, Inc. v. Volpe, Civil No. 72–17–1 (S.D.Iowa, Filed Nov. 30, 1972) ; and National Forest Preservation Group v. Volpe, 352 F.Supp. 123 (D.Mont. Filed Dec. 11, 1972).

■ Count V of the plaintiffs' complaint, alleges irregularity in the public hearing process concerning this route. These allegations are specifically refuted by the evidence before this Court as the record shows that both location and design public hearings were held and that adequate notices of these hearings were published in local community newspapers.

Furthermore, the Court is of the opinion that there has been no violation of the plaintiffs' constitutional rights. Therefore, the Court concludes that the plaintiffs are not entitled to relief under Count VII of the Complaint.

■ Likewise, the Court finds that the allegations of Count VIII of the complaint charging violation of the Clean Air Amendments of 1970, P.L. 91–604, 84 Stat. 1676 are without merit. As has been stated above, the record clearly shows that the Secretary re-

viewed the State's environmental impact statement and commented in writing on it at some length.

For the foregoing reasons, the Court hereby concludes that judgment should be entered in favor of the defendants herein.

It is so ordered.