The **CITIZENS ENVIRONMENTAL COUNCIL et al., Plaintiffs-Appellants,**

v.

John **VOLPE, Secretary of Transportation, et al., Defendants-Appellees.**

**No. 73–1158.**

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 15, 1973.

Decided Sept. 19, 1973.

William H. Pickett, Kansas City, Mo., for appellants.

Terrence L. O'Brien, Dept. of Justice, Washington, D. C. (Robert J. Roth, U. S. Atty., Topeka, Kan.; Wallace H. Johnson, Asst. Atty. Gen., Dept. of Justice, and Roger K. Weatherby, U. S. Atty., Topeka, Kan.; Edmund B. Clark and George R. Hyde, Dept. of Justice, Washington, D. C., on the brief), for appellees.

Donna Munn Heller, State Highway Commission of Kansas, Topeka, Kan. (James H. DeCoursey, Jr., and Paul W. Clark, State Highway Commission, Topeka, Kan., on the brief), for appellee State Highway Commission of Kansas.

Wright W. Crummett, Overland Park, Kan., for intervenor-appellee City of Overland Park, Kansas.

F. Philip Kirwan, Kansas City, Mo. (Gordon R. Gaebler and Blake A. Williamson, Kansas City, Mo., on the brief; of counsel: Margolin & Kirwan, Kansas City, Mo. and Williamson, Cubbison & Hardy, Kansas City, Kan.), for intervenor-appellees J. A. Tobin Construction Co.

Before LEWIS and BARRETT, Circuit Judges and SMITH*, District Judge.

BARRETT, Circuit Judge.

The Citizens Environmental Council (CEC) brought this action to enjoin construction of a federally-assisted highway by-pass. The District Court granted a summary judgment in favor of the defendants-appellees. See The Citizens Environmental Council v. Volpe, 364 F. Supp. 286 (D.Kan.1973).

The State of Kansas plans to relocate 2.76 miles of U. S. Route 69, the Switzer By-Pass, in the cities of Overland Park and Lenexa, Kansas, close to Kansas City, Kansas and Kansas City, Missouri. The suit involves the northern leg of the by-pass which will connect two interstate highways, I–35 and I–435. The by-pass plan originated from a traffic study in 1959. Its location was chosen prior to urbanization of the area but with the expectation of increased population in the future.

On April 2, 1959, pursuant to 23 U.S. C.A. § 128(a), the Kansas State Highway Commission (SHC) conducted a public hearing at Olathe, Kansas to discuss the proposed by-pass. On August 26, 1959, the Federal Highway Administration Division Engineer approved the by-pass. It was also approved by the Regional Engineer. In 1962 the Division Engineer approved SHC's request to acquire the right-of-way. Right-of-way acquisition occurred during 1962–1964 at a time when the area was still rural in character.

Congress enacted the National Environmental Policy Act (NEPA) in 1969, effective January 1, 1970. Section 102 (2) of NEPA requires all federal agencies to submit an environmental impact statement in each recommendation for major federal actions significantly affecting the quality of the human environment. 42 U.S.C.A. § 4332(2)(C). The Council on Environmental Quality (CEQ) issued Interim Guidelines for preparation of the impact statement. It also provided for a draft statement and a final statement. Policy and Procedure Memorandum (PPM) 20–8 was issued in January of 1969 providing for a corridor hearing and a design hearing. Pursuant to PPM 20–8, the design hearing provides an opportunity to present views on major design features including social, economic, environmental and other effects of alternative designs. The social, economic and environmental considerations include the effects of aesthetics, noise, air and water pollution, and displacement of families and businesses.

On April 23, 1971 the design hearing was held in Overland Park, Kansas. The Final Environmental Impact Statement (EIS) was filed with the CEQ on August 26, 1971. Comments by Ruckelshaus, Administrator of The Environmental Protection Agency, were included.

The CEC contends that: (1) the EIS is inadequate; (2) an additional hearing is necessary; and (3) the Court erred in granting appellees' motion for summary judgment.

The CEC alleges that the impact statement is inadequate because it was prepared by the State Highway Commission and because it does not detail alternative routes. The statute provides that the EIS must include:

(i) the environmental impact of the proposed action,

(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

* For the Eastern District of Michigan, sitting by designation.

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

42 U.S.C.A. § 4332(2)(C).

■ The SHC prepared the impact statement in consultation with state, federal and private agencies. The Secretary of Transportation did not simply "rubber stamp" the State's work. He reviewed it and adopted it as his own. This procedure is consistent with the goals of NEPA. Finish Allatoona's Interstate Right, Inc. v. Volpe, 355 F. Supp. 933 (N.D.Ga.1973).

■ The EIS analyzed possible alternative routes, including abandonment of the project, and concluded that they would be in conflict with projected growth patterns. We may certainly anticipate particular circumstances which require an exhaustive, painstaking and extensive report of the environmental effects of alternatives in the EIS. Such, however, is not required in the case at bar. The discussion of the environmental effects of alternatives in the EIS in this case are sufficient to allow a reasoned choice. The EIS prepared by the SHC and adopted by the FHWA fully complies with NEPA requirements.

■■ The CEC alleges that an additional corridor hearing was necessary. The equivalent of a corridor hearing was held in 1959. The land was acquired in the early 1960's. A design hearing was held in 1971. The 1959 hearing met the requirements of PPM 20–8. A new corridor hearing is therefore not required. PPM 20–8 does not apply retroactively. Wildlife Preserves, Inc. v. Volpe, 443 F.2d 1273 (3rd Cir. 1971).

The CEC contends that there were many genuine issues of material fact presented to the trial court. It relies on several conclusory affidavits and a letter from the EPA dated May 4, 1972, stating that there is a lack of data on air pollution and noise levels.

■ Four affidavits were filed by the CEC to oppose the summary judgment. They are generalized, conclusionary and unsubstantiated. They are insufficient to create a genuine factual dispute. Ashwell & Company v. Transamerica Insurance Company, 407 F.2d 762 (7th Cir. 1969). Rule 56(e), Fed. R.Civ.P., requires personalized affidavits to successfully oppose a motion for summary judgment.

■ EPA's comments filed on May 4, 1972 were "category 2" comments according to its procedure. They were merely comments of inadequate information but not a condemnation of the project itself. We observe also that these comments were received eight months after the final EIS was filed with the CEQ and six months after design approval by FHWA. EPA had no comment during the period of review following the design hearing. The EIS, in fact, discloses an awareness of noise impact and notes the selection of a depressed main line design to muffle it and to reduce air pollution in the corridor area.

The trial court did not err in granting a summary judgment to the appellees. See The Citizens Environmental Council v. Volpe, *supra.*

Affirmed.