**FAYETTEVILLE AREA CHAMBER OF COMMERCE and Interstate 95 Committee, Plaintiffs,**

v.

**John A. VOLPE, Individually and as Secretary of Transportation, et al., Defendants.**

**Civ. No. 933.**

United States District Court,
E. D. North Carolina,
Fayetteville Division.

Feb. 1, 1974.

J. O. Tally, Jr., Tally & Tally, Fayetteville, N.C., Morris Chertkov, Rowley & Scott, Washington, D.C., for plaintiffs.

Thomas P. McNamara, U. S. Atty., Jack B. Crawley, Jr., Asst. U. S. Atty., R. Bruce White, Jr., Deputy Atty. Gen., Raleigh, N.C., for defendants.

## MEMORANDUM OF DECISION

DUPREE, District Judge.

In this action the plaintiffs, Fayetteville Area Chamber of Commerce and the Interstate 95 Committee, seek judicial review of the selection and approval of the defendants of a by-pass location of Federal Interstate Highway Route 95 around Fayetteville, North Carolina. Jurisdiction is laid under Section 10 of the Administrative Procedure Act, 5 U. S.C. § 702. In their complaint filed almost six years ago plaintiffs alleged that the approval by the defendants of a by-pass location rather than aligning the proposed new interstate highway along existing U. S. Highway 301 thus bringing it within the eastern city limits of Fayetteville was arbitrary, capricious and otherwise not in accordance with law. This court, following what it perceived to be the standard for judicial review in such cases as outlined in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L. Ed.2d 136 (1971), conducted a "thorough, probing, in-depth review" of the administrative record submitted by the defendants and concluded that the action of the defendants in approving the by-pass location and rejecting the proposal of the plaintiffs was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, and the motion of defendants for summary judgment was therefore allowed.

On appeal to the Court of Appeals for the Fourth Circuit this court's conclusion based on the administrative record as it then existed was approved, but in view of two developments in the law subsequent to the compilation of that record, the case was remanded to this court pending compliance by the Secretary of Transportation with the requirements of Section 102(C) of the National Environmental Policy Act, 42 U.S.C. § 4332(C), and Section 128(a), as amended, of the Federal-Aid Highways Act, 23 U.S.C. § 128(a). Although enacted long after defendants' initial approval of the by-pass location, these statutes were held to apply retrospectively to an ongoing highway project in Arlington Coalition on Transportation et al. v. Volpe, 458 F.2d 1323 (4th Cir. 1972), if the project has not reached a stage of completion at which it would not be economically feasible to alter or abandon the project's proposed location. This court was directed to retain jurisdiction "until

such time as the Secretary satisfies [the] court that there has been full compliance with the requirements of Section 102(2)(C)". The court was further directed to conduct "such further proceedings as may be necessary in. light of the decision in *Arlington* and the views herein expressed".

The Secretary, apparently anticipating the Fourth Circuit's ruling in *Arlington* of the necessity of his compliance with NEPA, had already taken steps to have an Environmental Impact Statement (EIS) prepared prior to the remand of the case to this court by the Fourth Circuit, and following remand a final EIS was prepared, circulated and approved by all interested parties. Adhering to a time schedule established by this court, the North Carolina State Highway Commission (now the Division of Highways, Department of Transportation and Highway Safety) conducted a further public hearing on July 16, 1973, for the purpose of complying with Section 128(a), as amended, of the Federal-Aid Highways Act. Thereafter the state authorities reaffirmed the by-pass location for I-95, and made a summary report to the United States Secretary of Transportation in compliance with the applicable regulations on October 5, 1973, requesting that the Federal Highway Administration reaffirm its approval of the by-pass location. On October 24, 1973, the division engineer for the Department of Transportation, Federal Highway Administration, wrote to the North Carolina State Highway Administrator, Division of Highways, as follows:

"We have completed our review of the summary report transmitted with your letter dated October 5, 1973. We have previously reviewed the other documents submitted as required by PPM's 20–8 and 90–1 and now consid-

er that the necessary requirements have been met.

"We hereby reaffirm the corridor location approval originally given by Mr. F. C. Turner on March 21, 1968, and approve the design of the project."

Following this second approval of the I-95 by-pass location the defendants renewed their motion for summary judgment to which the plaintiffs filed responses bringing under attack the attempted compliance by defendants with the requirements of NEPA and Section 128(a) of the Federal-Aid Highways Act. It is this motion which is now before the court for decision.

Although the matter has been argued at length on two occasions by able counsel for plaintiffs and defendants, counsel are still not able to agree upon the appropriate standard of judicial review which should be employed in cases such as this. With due deference this court is constrained to observe that the decisions to which it has been obliged to refer for guidance have not always been models of clarity. In the following discussion of the actions taken by the defendants to comply with the Fourth Circuit's directives on remand this court has concluded to examine the actions of the defendants in the light of all the standards of review of which it is aware. Accordingly, the court has made a "thorough, probing, in-depth review" of the additions made to the administrative record submitted by the defendants subsequent to remand as required by *Overton Park*, supra; it has reviewed the agency decisions on the merits to determine if they are in accord with NEPA as required by Conservation Council of North Carolina v. Froehlke, 473 F.2d 664 (4th Cir. 1973),[1] and Appalachian Power Company et al. v. Envi-

1. To what extent, if at all, this decision was rendered "inoperative" by Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), is unclear. See Conservation Council of North Carolina v. Froehlke, No. 73–8095 decided November 20, 1973. That there is disagreement among the circuits as to the appropriate standard of review is illustrated by National Helium Corporation v. Morton, 486 F.2d 995, 1006 (10th Cir. 1973).

ronmental Protection Agency, 477 F.2d 495 (4th Cir. 1973); and has undertaken to determine if the Secretary of Transportation inadequately explained his decision, all with the view to determining whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law". Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

## THE ENVIRONMENTAL IMPACT STATEMENT

The plaintiffs have mounted a two-pronged attack on the EIS contending first that the Secretary exceeded his statutory authority by permitting the EIS to be prepared by the North Carolina Transportation Department rather than preparing it himself and second, that the EIS as prepared does not adequately comply with the requirement of Section 102(2)(C)(iii) of NEPA that "alternatives to the proposed action" be included therein.

In support of their first point plaintiffs have cited and relied on Greene County Planning Board v. Federal Power Commission, 455 F.2d 412 (2nd Cir. 1972), cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90, and Conservation Society of Southern Vermont v. Secretary of Transportation, 362 F. Supp. 627 (D.Vt.1973). With these two exceptions all of the cases dealing with the delegation of EIS preparation to an outside agency have permitted such delegation where the federal agency significantly participated in the preparation of the EIS. See, for instance, Finish Allatoona's Interstate Right, Inc., v.

Volpe, 355 F.Supp. 933 (N.D.Ga.1973), aff'd., 484 F.2d 638 (5th Cir. 1973), and Life of the Land v. Brinegar, 485 F.2d 460 (9th Cir. 1973). In *Life of the Land* it appeared that the EIS was prepared by a private engineering consulting firm which had a financial interest in an affirmative decision on the proposed project, but in view of evidence of significant participation by the federal agency in the preparation of the EIS, delegation of the EIS preparation was held not to be improper or illegal. The *Greene County* and *Conservation Society of Southern Vermont* cases were distinguished on the grounds that in those cases the federal agency had "abdicate[d] a significant part of its responsibility" to another organization.[2]

In the case at bar the record indicates good faith participation by responsible federal officials in the preparation of two draft environmental statements and the final EIS. More importantly, an examination of these quite bulky documents has convinced the court that not only were all the required procedural steps followed by the state and federal agencies but that both the state and federal defendants considered all relevant factors in reaching decision and that the decision did not represent "a clear error of judgment". A full articulation of the reasoning of the state and federal agencies is contained in the EIS in connection with its treatment of each of the five requirements of NEPA.[3]

The court is likewise not impressed with plaintiffs' argument that the EIS did not adequately cover "alternatives to the proposed action" as required by Section 102(2)(C)(iii) of

---

2. It should be noted that the Vermont District Court in *Conservation Society* found the EIS prepared by the Vermont Highway Department "in substance not to have been biased" and that it demonstrated (with one exception not pertinent here) "good faith consideration of the environmental values involved . . ." 362 F.Supp. 627, 633.

3. 42 U.S.C. § 4332(2)(C) provides that the EIS must include:
    "(i) the environmental impact of the proposed action,

"(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

"(iii) alternatives to the proposed action,
"(iv) the relationship between local short-term uses of man's environmental and the maintenance and enhancement of long-term productivity, and

"(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented."

NEPA. The basis for the argument is the assertion in plaintiffs' supplemental answer to defendants' motion for summary judgment that a plan for "an intermediate location" was submitted to the State Highway authorities "by a respected, technically-qualified and long-time resident of Fayetteville, who was not aligned with the plaintiffs in this case" and that although this alternative plan was considered by the state before the United States Department of Transportation gave its approval, "neither the report required under 23 U.S.C. § 128(b) nor the Environmental Impact Statement made any mention of it."

That this alternative proposal was indeed considered by the North Carolina Division of Highways is established by a detailed memorandum from its Planning and Research Branch to the State Highway Administrator dated September 21, 1973[4] attached as an exhibit to plaintiffs' supplemental answer. In this memo the proposed intermediate location was compared in detail with the by-pass location approved by the defendants and the U. S. 301 alignment proposal favored by the plaintiffs. As against the by-pass location it was found to have one advantage (reducing the effect on wildlife) and thirteen disadvantages many of which were environmentally related. As against the U. S. 301 alternative it was found to have six advantages and two disadvantages, one of each being environmentally related.

It is perfectly obvious that regardless of when this alternative proposal was first received and considered by the state officials, its inclusion in the EIS would have served only to increase the size of that already voluminous document and that it could in no way have altered the conclusions reached therein on alternatives. The same is true of the failure to mention the "intermediate location" proposal in the report made by the state under 23 U.S.C. § 128(b). As was said in *Life of the Land,* supra, 485 F.2d 460, 472,

"NEPA's 'alternatives' discussion is subject to a construction of reasonableness. N.R.D.C., Inc. v. Morton, *supra,* [148 U.S.App.D.C. 5], 458 F.2d [827] at 834. Certainly, the statute should not be employed as a crutch for chronic faultfinding. Accordingly, there is no need for an EIS to consider an alternative whose effect cannot be reasonably ascertained, and whose implementation is deemed remote and speculative."

## COMPLIANCE WITH 23 U.S.C. § 128(a) AS AMENDED

The second purpose to be served by the Fourth Circuit's remand of the case to this court was to permit compliance with 23 U.S.C. § 128(a) relating to public hearings with respect to the route of a proposed federal-aid highway. At the time of the first public hearing in this case in 1966 Section 128(a) required only that information be amassed at the hearing to aid in the consideration of the economic effects of the locations under consideration. Effective August 23, 1968, which was after the institution of this action, Section 128(a) was amended to provide that additional information must be sought at such hearings to aid in the consideration of the social effects of the proposed location, its impact on the environment, and its consistency with the particular community's urban planning objectives and goals. In order to comply with these new requirements the state authorities after due advertisement conducted a further lengthy public hearing on July 16, 1973, at which the plaintiffs were represented by counsel and offered expert testimony. A lengthy transcript of that hearing has been filed as part of the administrative record in this court and has been reviewed.

---

4. The record does not indicate when this alternate plan was received by the Division of Highways. On oral argument counsel for this defendant indicated that it was not available at the time of the public hearing on July 16, 1973, while counsel for the plaintiffs stated that he was in position to show that it was received by the state officials prior to that date. In the view the court takes of the matter, this is immaterial.

Despite the claim of plaintiffs in their brief that the record in this case "is little short of a complete disaster", the court finds that it is on the contrary quite complete and by no means "a disaster". It will be recalled that the Fourth Circuit has already found the record in this case to contain ample evidence that the Secretary gave adequate consideration to local needs, the possible use of existing Highway 301 as an alternate route and the possible economic impact on the local economy resulting from the by-pass location of I-95. This court now finds that the July 16, 1973 hearing fully covered the social effects of the proposed by-pass location, its impact on the environment and its consistency with the community's urban planning objectives and goals.[5]

■ Central to the plaintiffs' argument as to the alleged inadequacy of the record is the contention that it is "devoid of any evidence of how the federal officials considered and resolved any of the many controversial issues." The court is of the opinion, however, that the record fully discloses the factors which were considered by the federal officials, and even if it can be said that they did not explain in detail the reasons for their decision approving the actions of the state officials following remand, the determinative reason for the action taken is perfectly apparent: In addition to the reasons fully explicated for his initial approval of the by-pass location in 1968 (which counsel for plaintiffs on oral argument at the most recent hearing praised for their comprehensiveness) the Secretary (acting through his subordinates) has now found the EIS and the record of the second public hearing to be fully supportive of the initial decision. That brevity in the expression of administrative decision is not fatal is illustrated by Camp v. Pitts, supra, 411 U.S. at page 143, 93 S. Ct. 1241, and that inquiry into the mental processes of administrative decision-makers is usually to be avoided is another teaching of *Overton Park*, supra.

The conclusion is that the Secretary's decision in this case is fully sustainable on the entire administrative record as it now exists, and it follows that defendants are again entitled to allowance of their motion for summary judgment. Judgment will be entered accordingly.

5. Also covered at this hearing was the matter of the design of the proposed location as required by the Department of Transportation's policy and procedure memorandum 20–8. Plaintiffs have raised no question as to the adequacy of the hearing for this purpose.