Mary E. BROWN et al., Plaintiffs,

v.

Caspar WEINBERGER, Secretary De-
partment of Health, Education and
Welfare, Defendant.

Civ. No. H–74–479.

United States District Court,
D. Maryland.

Oct. 15, 1974.

C. Christopher Brown and Dennis M. Sweeney, Baltimore, Md., for plaintiffs.

George Beall, U. S. Atty., Virginia S. Draper, Asst. U. S. Atty., Dorothy R. Fait and Richard Strom, Baltimore, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

In this civil action, plaintiffs, on behalf of themselves and a class of individ-

uals similarly situated, seek injunctive [1] and declaratory relief which would entitle them to continue to receive certain Social Security benefits until determined to be ineligible following adequate notice and a hearing as required by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Named as defendant is the Secretary of the Department of Health, Education and Welfare (HEW).

Before January 1, 1974, persons in Maryland who were permanently and totally disabled and whose financial resources fell below a certain level received payments under a joint federal-state program, entitled the Maryland Aid to the Permanently and Totally Disabled (APTD). In October 1972, Congress had passed Public Law 92–603, 42 U.S.C. § 1381 et seq., effective January 1, 1974, which transferred the federally-supported but state-administered program to a new federally-supported program, called Supplemental Security Income (SSI), administered by the Social Security Administration of HEW. Aged, blind or disabled persons with incomes and resources below a determined level qualified for these federal benefits under SSI.

In the 1972 legislation, Congress provided that any person who was permanently and totally disabled as defined in a state plan and who had received benefits under that plan in December 1973 would automatically qualify under SSI. On December 31, 1973, Congress suddenly amended this "grandfather" provision in the 1972 enactment by passing Public Law 93–233 one day before the new program was to become effective. The amendment permitted benefits to be paid without further inquiry only to those who had qualified under a state plan and who had received benefits for at least one month prior to July 1973. Therefore, those persons who first received state benefits after July 1, 1973 did not automatically and unconditional-

ly qualify for conversion to SSI; instead, it was required that a determination of disability be made as to them by the Social Security Administration pursuant to new SSI standards. 42 U.S.C. § 1382c(a)(3)(E). Plaintiffs and their class fall within this category of persons who did not receive state benefits until after July 1, 1973.

This last minute change in a program which became effective on January 1, 1974 suddenly placed an almost impossible burden on the Social Security Administration. That agency quite understandably could not make a new determination as to eligibility for each of the thousands of such persons across the country before the monthy payments were due. Therefore, the Secretary invoked a provision included in Public Law 92–603, 42 U.S.C. § 1383(a)(4)(B), which permitted him to continue benefits up to three months for persons who were "presumptively disabled". Those persons, like plaintiffs, who had started to receive benefits from the State after July 1, 1973 were thus initially deemed by the Secretary to be "presumptively disabled" and entitled to SSI benefits. Thereafter, Congress, in Public Law 93–256, effective March 28, 1974, ratified and confirmed this exercise of administrative authority by the Secretary and further authorized him to continue such payments to those presumptively disabled throughout 1974. Payments would cease, however, one month after the Secretary determined that an individual was ineligible.

As they fell within the "presumptively disabled" classification, plaintiffs and the members of their class had received notification from the Social Security Administration that they qualified for SSI payments and would receive the government checks which were gold colored. Such checks were received in early 1974, but during the months of March and April 1974, plaintiffs received notices that the Secretary had determined

---

1. The complaint sought interlocutory and permanent injunctive relief and was accompanied by a motion for a preliminary injunc-
tion. Thereafter, plaintiffs filed an application for a temporary restraining order.

them ineligible under SSI and that payments would cease commencing the following month. No reasons were given for such finding of ineligibility and no hearing had been accorded plaintiffs before the determinations were made. The notice did advise each recipient of his or her right to have such determination of ineligibility reconsidered by the Social Security Administration. Such request for reconsideration was required to be submitted within 30 days of the receipt of the notice. During the period required for this administrative review, however, the individual in question would not be receiving any SSI benefits, although full retroactive payments would be made if the individual were later found to be eligible following such reconsideration.

This class action was filed by the four individual plaintiffs before their SSI payments had stopped.[2] They claim that their benefits may not be terminated unless they have first been given proper notice and a hearing, as required by Goldberg v. Kelly, *supra*.

After a hearing, this Court entered a temporary restraining order on May 29, 1974. This Court found that plaintiffs and the class of individuals in Maryland which they represented would suffer immediate and irreparable damage if they were denied the payment of benefits during the period when the order would be effective.[3] The order directed the Secretary to continue SSI payments to plaintiffs and to:

> "[a]ll other persons residing in Maryland who (1) have received SSI benefits on or after January 1, 1974, and (2) have received state aid to the disabled on or before December 31, 1973, but not before July 1, 1973, and (3) have been or will be terminated from receiving SSI benefits, and (4) either

have filed for a reconsideration pursuant to Subpart N of Part 416 of Title 20 of the Code of Federal Regulation or whose period for filing a request for a reconsideration has not begun or expired as of the time of the entry of this order. But further provided that if SSI benefits are paid with respect to any individual whose time for filing a request for reconsideration has not run and such individual does not timely request reconsideration, no further benefits shall be payable to such individual."

Presently before the Court is plaintiffs' motion for a preliminary injunction and defendant's motion to dismiss or for summary judgment. It has been agreed that the case would be tried on its merits at the same time that the Court heard the motions, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. Furthermore, defendant has agreed that the case may properly proceed as a class action since all of the requirements of Rule 23 have been met. The pertinent facts are not in dispute, but defendant has challenged the jurisdiction of this Court to hear this case and has further contended that plaintiffs are not possessed of rights subject to the protection of this Court under Goldberg v. Kelly, *supra*, and other relevant authorities.

## I

### *Jurisdiction*

Plaintiffs claim that jurisdiction exists in this case under the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361, and also under the Administrative Procedure Act, 5 U.S.C. § 701, et seq. In their complaint, plaintiffs also asserted that jurisdiction existed under 28 U. S.C. § 1331, but they have now abandoned that claim.

---

2. Plaintiff Townes has now been found to be disabled under other standards and has been dismissed as a plaintiff.

3. By stipulation, it was agreed that the provisions of the temporary restraining order

would remain in effect until a ruling on plaintiffs' motion for a preliminary injunction.

28 U.S.C. § 1361 provides as follows: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Understandably, the controversy over mandamus as a jurisdictional basis centers in this and other cases upon the nature and clarity of the duty owed. Plaintiffs contend that under the *Goldberg* case, the Secretary has a clear duty to provide adequate notice and a hearing before the termination of their SSI disability benefits. The defendant, on the other hand, perceives the government's payments on the basis of presumptive disability as a mere gratuity to be enjoyed only until the time of termination by the Secretary.

■ The justification for mandamus jurisdiction appears much more readily when a duty is very clear as in Feliciano v. Laird, 426 F.2d 424 (2d Cir. 1970). Indeed, in Knuckles v. Weinberger, 371 F.Supp. 565, 567 (N.D.Cal.1973), a District Court refused to recognize mandamus jurisdiction because the duties were " . . . not plainly and positively ascertained, and free from doubt." The Fourth Circuit, in the recent case of Burnett v. Tolson, 474 F.2d 877, 880 (4th Cir. 1973) stated that the traditional requirements for invoking federal mandamus are:

"(1) a clear right in the plaintiff to the relief sought;

(2) a clear duty on the part of the defendant to do the act in question; and

(3) no other adequate remedy available;"

quoting from Carter v. Seamans, 411 F. 2d 767, 773 (5th Cir. 1969). Applying these requirements, the Court in *Burnett* found mandamus jurisdiction to exist where the Commanding General of Ft. Bragg Military Reservation had refused to allow a group of civilians to distribute handbills at places on the reservation open to the public. The Court relied heavily on the Supreme Court's decision in Flower v. United States, 407 U.S. 197, 92 S.Ct. 1842, 32 L.Ed.2d 653 (1972), which gave civilians the right to exercise their constitutionally protected freedom of expression at places on a military reservation open to the public.

■■ Plaintiffs here assert a similar theory for the exercise of mandamus jurisdiction, namely, that a government officer can be compelled to perform a constitutionally protected duty as defined in a Supreme Court decision. *Burnett*, of course, involved First Amendment rights, but other constitutional rights are entitled to similar protection. As in *Burnett*, this Court should not hesitate to interpet the mandamus statute so as to afford protection to a constitutionally protected right, in this instance the right to notice and a hearing before the termination of welfare benefits. The granting of such a right by defendant is not discretionary if the plaintiffs have a statutory or other entitlement to the benefits here involved.

■ Defendant argues that the Mandamus Act requires that a clear duty exist at the outset of the litigation. It is claimed that there is no legislative or other duty on the part of the Secretary to make welfare payments to plaintiffs. In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Supreme Court in a federal question case noted that whether a complaint states a cause of action is one of law which " . . . must be decided after and not before the court has assumed jurisdiction over the controversy." (At 682, 66 S.Ct. at 776). In this case, the allegations of the complaint do not present an unsubstantial claim, and in fact plaintiffs have clearly asserted the existence of a constitutionally-protected right to notice and a hearing under *Goldberg* arising as a result of defendant's duty to continue to pay them welfare benefits. This Court can thus assume jurisdiction at the outset and proceed to determine the existence of defendant's duty on the merits. Should this Court find the absence of a

clearly defined duty, the decision in defendant's favor would rest on the merits, rather than on a lack of jurisdiction.[4]

A number of recent decisions have recognized the existence of jurisdiction under the Mandamus Act in cases involving the termination or reduction of Social Security or SSI benefits. See e. g. Lyons v. Weinberger, 376 F.Supp. 248 (S.D.N.Y.1974), and Ryan v. Shea, Civil No. 74–M–459 (D.Colo. June 21, 1974). In Mattern v. Weinberger, 377 F.Supp. 906 (E.D.Pa.1974), the Court in a recoupment case, noted that the Mandamus Act did not distinguish between a statutory and a constitutional duty. This Court would agree with those decisions and concludes that jurisdiction exists here under 28 U.S.C. § 1361.[5]

## II

### Merits

■ Goldberg v. Kelly, *supra*, sets forth the due process requirements upon which plaintiffs rely in this case. In Goldberg, the Court held that procedural due process requires a State to grant recipients of public assistance payments adequate notice and an evidentiary hearing before the termination of their benefits. The plaintiffs had been receiving financial aid under the federally assisted program of Aid to Families with Dependent Children (AFDC) or under New York State's general Home Relief program. For qualified persons, these benefits, according to the Court, were not a privilege, but a matter of statutory entitlement. Therefore, qualified recipients were found to have a property interest in continued benefits which could not be terminated by the State without resort to proper due process procedures.

■ To establish their right to due process notice and hearing in this case, plaintiffs must demonstrate a property interest or a statutory entitlement to the

disability payments. The defendant argues that plaintiffs have no right to SSI payments until they have finally established their eligibility under the program; in other words, that the Goldberg standards do not apply to "initial entitlements". The Secretary's own regulations, 20 C.F.R. §§ 416.1331, et seq., presently provide for adequate notice, hearing and even the continuation of payments before the termination of benefits, but the defendant maintains that these protections do not apply to plaintiffs because they have never been determined to be finally eligible under the new SSI standards. It is contended that at best the plaintiffs were only "presumptively eligible", but that such eligibility is insufficient for the plaintiffs to receive the protections in question.

■■ Undoubtedly, the SSI program requires an initial evaluation according to new standards. Nevertheless, analysis of the circumstances here leads this Court to the conclusion that the stopping of these payments to plaintiffs involves the termination of a previously established statutory entitlement. As the Court stated in Goldberg, the source of the recipient's interest is the statute under which he qualified. In effect, the determination of an individual's ineligibility under SSI produces the same "termination" as did the caseworker's evaluation of ineligibility in Goldberg. As a result of Congressional action, plaintiffs were entitled to and did receive payments early in 1974 pending a decision concerning their eligibility. Before the Secretary acted, plaintiffs had a legislatively created right to these benefits. As the Court in Lyons noted, a governmental agency cannot avoid the Goldberg mandate by transferring an assistance program to a new agency and, ". . . then, labeling termination of welfare payments determinations of initial entitlement." (376 F.Supp. at 260).

4. In Hahn v. Gottlieb, 430 F.2d 1243, 1245 at n. 1 (1st Cir. 1970), the Court assumed jurisdiction under § 1361 but then decided that no constitutional duty existed.

5. Having found an adequate jurisdictional basis under the Mandamus Act, this Court does not find it necessary to decide whether the Administrative Procedure Act also furnishes an independent source of jurisdiction.

Of course, *Lyons* involved the reduction of benefits and not a determination of eligibility. Nevertheless, the principle is the same as both cases involved means of adjusting entitlements where a new program for *continuing* public assistance has been created.

In this case, plaintiffs first qualified under a state plan and were thus qualified for federal benefits under the presumptive eligibility status established by Congress. Pursuant to 42 U.S.C. § 1383(a)(4)(B), the Secretary made an administrative determination that persons like plaintiffs were entitled to payments in 1974 because presumptively eligible. Congress later ratified this administrative determination. Plaintiffs started receiving payments in January 1974 and, in fact, were formally advised by the Social Security Administration that they had "qualified" for the benefits. The payments received can hardly be seen as "gratuities", but were rather sums received under " . . . rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In considering the *Goldberg* standards, the *Roth* court observed that the welfare recipients in the earlier case had a claim of entitlement derived from a statute defining eligibility, and although they " . . . had not yet shown that they were, in fact, within the statutory terms of eligibility . . . they had a right to a hearing at which they might attempt to do so." *Roth, supra* at 577, 92 S.Ct. at 2709.

In the case presently before the Court, the government extended to plaintiffs the right to receive certain payments and now seeks to terminate such right without a hearing. In his dissent in *Goldberg*, Justice Black cogently described the effect of the majority's holding as requiring that " . . . once it [the government] decides to give welfare benefits, [it] cannot reverse that decision until the recipient has had the benefits of full administrative and judi-

cial review . . . " *Goldberg, supra,* 397 U.S. at 279, 90 S.Ct. at 1026.

It is no answer to say that the government had no duty to implement the program in the manner that it did and might have decided to require a determination of eligibility *before* a plaintiff received any benefits. Had this route been taken by legislative or administrative action, a claimant would encounter serious difficulties in showing an entitlement to these due process rights. But neither the Secretary nor Congress pursued this avenue, probably because of the recognition that a large number of the individuals involved would suffer great hardship if they had to await a determination of their status before the payments commenced. Once having reached the decision that the plaintiffs and the members of their class should immediately be considered presumptively entitled to these benefits and placed on the rolls, the Secretary cannot destroy such entitlement without complying with the due process requirements of *Goldberg*, which, as guaranteed in this case by the Fifth Amendment, would control his actions. Faced with abrupt Congressional action, the Secretary to avoid great hardship exercised his administrative discretion under 42 U.S.C. § 1383(a)(4)(B). This action was ratified and extended by Congress when it enacted Public Law 93–256.

The government argues that those declared ineligible can look to state aid as they press their federal administrative appeals and that they will receive full retroactive payments if eventually found eligible. However, for one living at bare subsistence levels, the potential time lag in transferring back to the state rolls can be devastating.

The House Ways and Means Committee showed similar concern in its consideration of Public Law 93–256. Noting that many who faced the suspension of payments would ultimately be found eligible, the Committee urged prompt action so as to avoid the "harsh and unjust effect" of suspension which would force those affected to turn to State pro-

grams for assistance.[6] House Report No. 93–871, 93rd Cong. 2d Sess., 3 U.S. Code Cong. & Admin.News p. 485 (1974). The urgency of uninterrupted payments was perhaps best expressed in *Goldberg* at 264, 90 S.Ct. at 1018:

> "Thus the crucial factor in this context . . . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." (Emphasis in original.)

Recently, the Fourth Circuit affirmed *per curiam* the lower court decision in Eldridge v. Weinberger, 361 F.Supp. 520 (W.D.Va.1973), aff'd 493 F.2d 1230 (4th Cir. 1974), which held that before the Social Security Administration could terminate a recipient's disability payments, an evidentiary hearing was required. The District Court did not find significant the alleged distinction between "welfare" payments of the *Goldberg* type and disability benefits, noting that an erroneous cut-off of either type of payment might create grievous loss. Moreover, the Court did not accept the government's argument that disability benefit terminations require a lesser due process standard because of the highly probative value of medical reports. Recognizing that determinations of disability did not rest exclusively on medical evidence, the Court concluded that a claimant's testimony "may be crucial in establishing a disability." (Id. at 525).

■ *Eldridge*, of course, involved the application of the *Goldberg* standards to a case involving disability benefits. More recently, another District Court in this Circuit granted a preliminary injunction in a case involving the payment of SSI benefits in North Carolina. Atwater v. Weinberger, Civil No. C–74–243–D (M.D.N.C. September 17, 1974). Similar results have been reached in other cases in which the termination of SSI benefits has been at issue. In Ryan v. Shea, *supra*, a Federal District Court in Colorado granted a preliminary injunction in a case similar to this one in favor of a class of SSI recipients. In Saurino v. Weinberger, Civil Action No. 74–140 (D.R.I. June 14, 1974), the District Court granted a temporary restraining order in favor of the plaintiffs until the Secretary afforded them a *Goldberg* type hearing. The Court in Lyons v. Weinberger, *supra*, granted a preliminary injunction in favor of a class seeking continuation of their SSI payments, but that case involved a reduction rather than a termination of benefits. On the other hand, a plaintiff who was a member of a similar class of presumptively disabled persons was denied relief in Soule v. Weinberger, Civil Action No. 74–1730–C (D.Mass. June 17, 1974). However, that case is distinguishable because plaintiff did not exercise his right to appeal from the administrative determination denying him benefits. The permanent injunction in this case should follow the general form of the temporary restraining order previously entered and require the continued payment of benefits only to those who seek reconsideration of their determinations within the time allowed.

■ This Court concludes that plaintiffs and the class they represent are entitled to a permanent injunction requiring the defendant to give them proper notice and a hearing pursuant to Goldberg v. Kelly, *supra*, before finding them ineligible under the SSI program. The defendant's own regulations, as set forth in 20 C.F.R. § 416.1417(b) and (c) would appear to meet the *Goldberg* standards and should be applied to plaintiffs and the members of their class before their benefits may be terminated. Generally, these regulations allow the calling of witnesses, a review of the record, the subpoenaing and cross-examination of adverse witnesses and representation by counsel. Although the thirty days written notice requirement would appear appropriate, this Court would suggest that the notice should contain a brief statement of the reasons

---

**6.** Figures supplied to the Court indicate that 40% of those seeking reconsideration by the Social Security Administration in disability cases were successful in 1973.

for the initial determination of ineligibility so that the individual involved may be better able to determine whether to seek reconsideration and to prepare for a subsequent hearing.

For these reasons, defendant's motion to dismiss or for summary judgment is hereby denied, and the Court hereby finds for plaintiffs and their class on the merits. Counsel are directed to submit an appropriate permanent injunction, prepared in accordance with the findings and conclusions of this Opinion.