Eloise **HANNINGTON** et al.,
Plaintiffs,

v.

Caspar W. **WEINBERGER**,
Defendant.

Civ. A. No. 74–1015.

United States District Court,
District of Columbia.

Feb. 25, 1975.

554

Bruce K. Miller, Nat. Senior Citizens Law Center, Los Angeles, Cal., for plaintiffs.

Robert M. Werdig, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, District Judge.

Plaintiffs bring this action to secure rights to due process notice and a hearing before benefits received pursuant to Title XVI of the Social Security Act (Supplemental Security Income Program) are reduced, suspended, or terminated. On July 10, 1974, this Court upon finding that the plaintiffs' complaint raised serious constitutional questions, enjoined the defendant from termininating the plaintiffs' benefits for the duration of this litigation unless adequate notice and an opportunity for a prior hearing were given. The Court also ordered that any benefits previously withheld be restored. There is presently before this Court cross motions for summary judgment, a motion by the plaintiffs to maintain a class action, and a motion by the defendant to dissolve or amend the Court's July 10th order. Oral argument on all pending motions was heard by the Court on January 15, 1975.

### I. JURISDICTION

Plaintiffs contend that jurisdiction has been conferred on this Court by 28 U.S.C. §§ 1331, 1361 and by 5 U.S.C. §§ 701–06. Defendant argues that 28 U.S.C. § 1331 (federal question) does not give the Court jurisdiction because the plaintiffs have failed to demonstrate that more than $10,000 is in controversy. He contests jurisdiction under 28 U.S.C. § 1361 (mandamus) because the plaintiffs are not seeking to compel a clear ministerial duty. Finally, defendant contends that 5 U.S.C. §§ 701–06 (Administrative Procedure Act) is not an independent grant of jurisdiction to the federal district courts.

■ Since it is now clear in this Circuit that the Administrative Procedure Act does provide an independent basis of jurisdiction for claims such as the plaintiffs here allege, it is unnecessary to discuss defendant's other jurisdictional objections. *See* Pickus v. United States Board of Parole, 165 U.S.App.D.C. ——, 507 F.2d 1107 (1974).

### II. THE MERITS

■ On October 30, 1972, Congress established the Supplemental Security Income Program (SSI), which is an income maintenance program for the aged, blind and disabled. Pub.L. No. 92–603, 86 Stat. 1329, 42 U.S.C.A. §§ 1381–85. The Act, which became effective on January 1, 1974, replaced state-administered programs with a new federal program which establishes uniform eligibility criteria. H.R.Rep. No. 92–231, 1972 U.S. Code Cong. & Admin.News 4992; *see* 42 U.S.C.A. § 1381.

As originally enacted, the SSI provided that a person found permanently and totally disabled under an approved state plan would automatically be considered disabled for purposes of SSI if he received aid during December 1973 and remained continuously disabled. Pub.L. No. 92–603, § 1614(a)(3)(A) (commonly known as the disability grandfathering clause). On December 31, 1973, one day before the SSI program was to become effective, Congress amended Pub. L. No. 92–603 to require that in addition to receiving benefits during December 1973, an individual must have received benefits for 1 month prior to July 1973. Pub.L. No. 93–233, § 9(2), 42 U.S.C.A. § 1382c(a)(3)(E). The purpose of this amendment was "to prevent the conversion to the Federal program of persons who in months immediately prior to the January 1974 changeover to SSI may have been improperly placed on the State aid to the disabled rolls." H.R. Rep. No. 93–871, 1974 U.S.Code Cong. & Admin.News2808; *see* S.Rp. No. 553, 93d Cong., 1st Sess. 250 (1973). Thus the plaintiffs, who became eligible for state disability benefits after July 1, 1973, but before December 31, 1973 (rollback cases), are not automatically grandfathered into the SSI program, but must meet the federal definition of disabled in order to qualify for SSI benefits. 42 U.S.C.A. § 1382c(a)(3)(A), (B).

Although no statutory provision existed as of January 1, 1974, to pay benefits to rollback cases as such, the Secretary of Health, Education and Welfare used a statutory provision that was ostensibly aimed at initial applicants who were found to be presumptively disabled to continue payments to rollback cases who had not been initially determined. *See* 42 U.S.C.A. § 1383(a)(4)(B); 20 C.F.R. § 416.954. Title 42, section 1383(a)(4)(B) provides that before an initial determination of eligibility the Secretary *may* pay benefits for a period of up to 3 months to those he judges to be presumptively disabled. By regulation, the Secretary classified rollback cases as presumptively disabled. 20 C.F.R. § 416.954. Under this system, if the initial determination is adverse to the party's claim for SSI benefits, presumptive disability benefits cease immediately. The unsuccessful claimant has the right to have his determination reconsidered in a proceeding where notice and hearing rights are provided. However, no benefits are provided after an adverse initial determination.

At the urging of the defendant Secretary of Health, Education and Welfare, Congress passed, on March 28, 1974, legislation extending the period during which the Secretary might pay presumptive disability benefits from 3 months to the period ending on December 31, 1974. Pub.L. No. 93–256, § 1, 42 U.S.C.A. § 1383 note; *see* H.R.Rep. No. 93–871, 1974 U.S.Code Cong. and Admin.News 2809. The Secretary's discretion to determine whether or not rollback cases were to be paid presumptive disability benefits was recognized specifically. *Id.* Also, Congress provided "that no such benefits may be paid on the basis of presumptive disability for any month after the month in which the Secretary

of Health, Education, and Welfare has made a determination as to whether such an individual is disabled, as defined in section 1614(a)(3)(A) of that Act [section 1382c(a)(3)(A) of this title]." *Id.* Plaintiffs are rollback cases who have received adverse initial determinations, but who have not yet had their cases reconsidered, and thus they would not be entitled statutorily to SSI benefits except for this Court's July 10 order.[1]

Regulations provide a four stage procedure to review both initial and continuing eligibility determinations. 20 C.F.R. §§ 416.1401–.1451. After an initial determination, there are the reconsideration, hearing, and appeals stages within the agency, and the final stage is judicial review. *See* 42 U.S.C.A. § 1383(c). Regulations provide that a person who was once found eligible for SSI benefits cannot have them reduced, suspended, or terminated until the reconsideration stage, which includes notice and hearing rights, is completed. 20 C.F.R. §§ 416.1417, .1419–.1420. Although an initial applicant may proceed to the reconsideration stage if an adverse initial determination is made, the initial applicant is not entitled to benefits pending the reconsideration determination.

The defendant does not question the right of a person once found eligible under federal standards to due process procedural rights before his benefits are terminated. *See* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970); 20 C.F.R. § 416.1420. Nor do the plaintiffs argue that all initial applicants should receive benefits after an adverse initial determination and until the reconsideration stage

---

1. In his Memorandum in Support of Defendant's Motion to Dissolve or Amend this Court's order, defendant has attached a letter from the Commissioner of Social Security to the Chairman of the House Ways and Means Committee which indicates that payments will be made after the close of 1974 to those rollback cases which have not been initially determined.

is completed.[2] The crux of the disagreement between the parties is whether the plaintiffs' position is more analogous to that of those already found eligible for SSI benefits or to that of the initial applicant.

As the plaintiffs point out, the leading case that defines the type of interest that must be present before due process procedural protections apply is Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). After warning that the *nature* of the interest, not its weight, is crucial, the Court went on to state:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .
>
> *Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.* Thus, the welfare recipients in Goldberg v. Kelly, *supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so. [3]

408 U.S. at 577, 92 S.Ct. at 2709 (emphasis added). The "independent source" which creates and defines the plaintiffs' interest is, of course, the federal SSI program.

The plaintiffs' principal claims to a property interest in continued SSI benefits can be categorized and summarized as follows:

The plaintiffs had been receiving benefits some time subsequent to July 1, 1973, under state-administered, but to a great extent federally funded, Old Age Assistance, Aid to the Blind, or Aid to the Totally and Permanently Disabled programs. Plaintiffs then received notices that they were to automatically receive SSI benefits in lieu of the state

---

2. Although they did not maintain this position in their papers, the plaintiffs suggested at oral argument that initial applicants who have no previous connection with a state program but who are receiving presumptive disability benefits have to be given notice and a hearing before their benefits can be terminated. *See* Brown v. Weinberger, 382 F.Supp. 1092 (D.Md.1974). This result clearly conflicts with the 3 month limit put on the payment of presumptive disability benefits by Congress. 42 U.S.C.A. § 1383(a)(4)(B). Moreover, it misses the point made by Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971) and other cases that discuss the nature of the property interest which must be present before procedural due process rights accrue. The Court notes that property interests are not created by the Constitution, but rather are created and *their dimensions are defined* by an independent source, which in this case is the federal SSI statute. *See id.* at 577, 92 S.Ct. 2701. Just as a 1 year teaching contract in *Roth* did not give rise to a property interest in continued employment, the payment of benefits which are clearly defined by Congress as provisional and temporary do not support a property interest in permanent SSI benefits.

3. The plaintiffs add emphasis to the last two sentences when they quote this passage from *Roth.* Memorandum in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction at 9. An erroneous conclusion that could be drawn from these sentences is that, like the plaintiffs in this case, the plaintiffs in Goldberg v. Kelly had not previously been found eligible for the applicable welfare programs. *See* Brown v. Weinberger, 382 F.Supp. 1092 (D.Md.1974). It is clear that in *Goldberg* the plaintiffs had been found eligible and had been placed on the permanent welfare rolls. 397 U.S. 254, 255–56, 90 S.Ct. 1011. The only question presented in that case was whether an individual once found fully eligible for welfare benefits for a specific program could be terminated from that same program without a prior evidentiary hearing. *Id.* at 260, 90 S.Ct. 1011.

aid they had been receiving.[4] The notices give no indication that the SSI benefits were in any way presumptive, tentative or temporary. Also, they give no indication that a factfinding proceeding was taking place to determine the plaintiffs' eligibility. Complaint ¶¶ 20, 35, 44. In light of these allegations, the plaintiffs conclude that it would be a serious erosion of due process to treat them as initial applicants for SSI benefits.[5]

■ The weakness of this formulation of the plaintiffs' position is that it requires the Court to hold the defendant Secretary of Health, Education and Welfare to a position contrary to that authorized in the statute and in his own regulations because of his failure to immediately explain the law to the plaintiffs. The plaintiffs point to no legal duty on the part of the Secretary of Health, Education and Welfare to send any notice of plaintiffs' status. Moreover, plaintiffs fail to point out that defendant's notice of ineligibility does summarize the SSI provisions relating to rollbacks and does notify the plaintiffs of their right to have their determination of eligibility reconsidered. Plaintiffs' Exhibits C, D & G. It is clear that Congress provided that persons in the plaintiffs' position be treated as initial applicants albeit with the potential of being considered presumptive-

ly disabled ones. The defendant's regulations reflect this fact. There is no support for a holding which binds Congress to pay benefits because the defendant agency head failed to inform the plaintiffs of their provisional status in a congressional program.[6]

■■ The plaintiffs also argue that Pub.L. No. 93–256, which authorized the Secretary to continue to treat the rollback cases as presumptively disabled during 1974, does not indicate any congressional position on the procedural rights to be given the plaintiffs before their benefits can be terminated. This contention is significant only if Pub.L. No. 93–256 is read in a vacuum. It is clear from the legislative history of SSI summarized earlier that by amending the original SSI program to exclude rollback cases from automatic eligibility, Congress put rollback cases into the category of initial applicants. Pub.L. No. 92–603, § 1614(a)(3)(A), as amended, Pub.L. No. 93–233, § 9(2). If no other action had been taken, those who were in the category of rollback cases would be entitled to SSI benefits only after an initial application was approved. The action of the Secretary of Health, Education and Welfare and the subsequent action of Congress in allowing rollback cases to be treated as presumptively disabled did not change their status from that of initial applicants. Rather, it is

4. Plaintiffs Hannington and Sinclair have attached thir notices as exhibits A and F to the complaint. There is no reference to whether a notice was received by plaintiff Cottrell, although the complaint does indicate that the defendant had some problem locating this plaintiff. Complaint ¶ 33.

5. This formulation of the plaintiffs' position is set out in their Memorandum of Law in Support of Motions for a Temporary Restraining Order and a Preliminary Injunction at 13–14 and in their Memorandum in Opposition to the Defendant's Motion to Dismiss and in Support of Plaintiffs' Cross Motion for Summary Judgment at 21–24. It is suggested in their Memorandum in Opposition to the Defendant's Motion to Dissolve or Amend this Court's Temporary Restraining Order at 3–5.

6. During oral argument, the plaintiffs appeared to abandon this formulation of their position. However, they did suggest that defendant's notice of continuing benefits demonstrates that the defendant agreed with the plaintiffs' position that SSI merely continues state-administered programs. This suggestion is belied by defendant's notice of ineligibility which shows the defendant's awareness of the special treatment given by Congress to rollback cases. Moreover, defendant's counsel noted during oral argument that the notices of continued benefits were in all likelihood prepared before the Congress' last minute exclusion of rollback cases from the grandfathering clause, and therefore are of little value in determining the defendant's interpretation of SSI as finally enacted.

clear from the regulations, the subsequent congressional enactment, and its legislative history that the Congress treated the rollback cases as initial applicants while giving the defendant discretionary authority to treat them as presumptively disabled. *See* Pub.L. No. 93–256, § 1; 20 C.F.R. § 146.954; H.R. Rep. No. 93–871, 1974 U.S.Code Cong. & Admin.News 2808. Thus, although Congress may not have spoken to the procedural rights of the plaintiffs in Pub.L. No. 93–256 it had already made their status clear in previous enactments.

In light of the congressional treatment of rollback cases, the plaintiffs' position can be upheld only if they can otherwise demonstrate an entitlement to benefits that cannot be taken away under Goldberg v. Kelly even by Congress without a due process notice and hearing. In an effort to sustain this burden, plaintiffs argue that the federal SSI program is more accurately viewed as a mere continuation of the state-administered programs and not as a new and different aid-to-the-disabled program. They assert that this shift in administration cannot diminish the nature of plaintiffs' interest in continued benefits or in the procedural safeguards which attend that interest.[7] In making this argument, plaintiffs rely on dicta in Lyons v. Weinberger, 376 F.Supp. 248 (S.D.N.Y.1974) which in turn is cited approvingly in Brown v. Weinberger, 382 F.Supp. 1092 (D.Md.1974), a Mary-

land class action involving the same issues that now face this Court.[8]

In Lyons v. Weinberger, the court held that before SSI benefits given to those grandfathered from New York State rolls (nonrollback cases) could be reduced, *Goldberg* type procedures had to be provided. In the process of reaching this result, the court characterized SSI as merely "a means of continuing state public assistance programs." 376 F.Supp. at 260. The *Lyons* court then offers the example of a state program that is transferred in its entirety from one state agency to another with the only change being the termination of some persons who were receiving benefits before the change was made. The court concludes that Goldberg v. Kelly would give those that would be terminated the right to notice and hearing before their benefits could be cut off. Although the Court would agree that *Goldberg* cannot be avoided by such a transparent ruse, the Court finds unpersuasive the suggestion made in *Brown* that this example is analogous to the situation in this case.

As the *Brown* court notes, the issues presented to the *Lyons* court differed from those presented to it and thus from those presented to this Court. The plaintiffs in *Lyons* were the nonrollback recipients of state benefits who were automatically grandfathered into SSI. The intent of Congress on this point is clear. 42 U.S.C.A. § 1382c(a)(3)(E). Thus, the court correctly found that the

**7.** This formulation, although suggested in plaintiffs' Memorandum in Support of a Temporary Restraining Order and Preliminary Injunction at 10–13, is most fully developed in their Memorandum in Opposition to Defendant's Motion to Dissolve or Amend this Court's Temporary Restraining Order.

**8.** Like Brown v. Weinberger, Ryan v. Shea (Civ. Action No. 74 M 459 (D.Col., June 21, 1974)), a class action involving the same issues that now face this Court, holds that rollback cases are entitled to notice and a hearing before SSI benefits are terminated. However, unlike *Brown*, the court in *Ryan* does not discuss its rationale for finding that rollback cases have a property interest

in continued SSI benefits. *See* Slip Op. 11–12.

In a letter dated January 29, 1975, plaintiffs submitted, pursuant to this Court's request, a summary of the disability rollback cases in which preliminary or permanent relief was granted and those in which such relief was denied. Of the 17 cases, including this action, granting some relief, only in *Brown*, *Ryan*, and Foster v. Weinberger, Civ. Action No. 74–0192–RCE (E.D.Va.) have courts granted permanent relief. Of the 3 cases denying relief, only Bowman v. Weinberger, Civ. Action —— (N.D.N.Y.) was a final judgment on the merits. Also, there are 5 cases in which no orders had been issued as of January 24th.

plaintiffs in *Lyons* had been given by Congress a statutory entitlement to the benefits they were receiving under federal SSI. 376 F.Supp. at 260. The only question presented was whether admittedly eligible individuals could have their benefits reduced without *Goldberg* rights. In this context, where the plaintiffs' eligibility under both programs is clear, the court's simplified example of a transfer of a single program from state agency to state agency may be a helpful illustrative device. However, to use that example in this case is to gloss over crucial distinctions that go to the heart of the question here presented: Do rollback cases have a legitimate claim of entitlement to continued SSI benefits?

■ Although the legislative history indicates that Congress was aware that SSI would have the effect of replacing the various state programs, the statute and its legislative history also make clear that SSI was a "major departure" from the traditional concept of public assistance embodied in the state programs. S.Rep. No. 1230, 92d Cong., 2d Sess. 384 (1972). SSI created a new federal program to be administered by the Social Security Administration, not by the states. Unlike the federally matched state programs, SSI is financed solely by the federal government. Uniform eligibility requirements replaced a variety of state standards. *See* 42 U.S. C.A. §§ 1382, 1382c. Moreover, SSI for the first time set a national minimum income level for the aged, blind, and disabled. *See* 42 U.S.C.A. § 1382(b). Thus SSI does not effect the simple transfer of a public assistance program within a single governmental entity, but rather it creates a new federal program which differs substantially from the state programs it allegedly replaces.

■ A crucial distinction between *Lyons* and this case is the treatment by Congress of the plaintiffs in each action. In *Lyons* the plaintiffs admittedly were treated as eligible individuals under SSI initially. As outlined above, Congress rejected automatic eligibility for rollback cases in Pub.L. No. 93–233. The plaintiffs in this case are asking the Court to repudiate Congress' prerogative to set its own eligibility standards. If the plaintiffs' position is upheld, Congress would apparently be bound by state determinations of eligibility, no matter how far out of line with federal norms, whenever it establishes a national program that covers the same subject matter as various state programs. No decision of the Supreme Court has given the Court the power to bind Congress in such a fashion.

■ It is the teaching of Board of Regents v. Roth that the courts must look to the source of the benefit to determine its dimensions. 408 U.S. at 577, 92 S.Ct. 2701. The source of SSI benefits is the statute enacted by Congress that specifically denies the plaintiffs any property interest in continuous benefits. The Court rejects the plaintiffs' efforts to bootstrap their eligibility under state public assistance programs into eligibility under a substantially different federal program. Therefore, since the plaintiffs have failed to demonstrate a "legitimate claim of entitlement" to continued SSI benefits, the procedural protections of the due process clause do not apply. 408 U.S. at 569–70, 92 S.Ct. 2701. The Court will deny the plaintiffs' motion for summary judgment and will grant the defendant's cross motion for summary judgment.

The defendant has moved the Court to dissolve or amend the July 10th order enjoining the termination of plaintiffs' benefits until notice and a hearing are given. Since by its terms that order expires with a judgment on the merits, the Court will deny defendant's motion as moot.

■ The plaintiffs have moved to have the Court certify this case as a class action. Because of the Court's determination on the merits, any further consideration of plaintiffs' class action motion is inappropriate. Therefore, the Court denies plaintiffs' motion to maintain this case as a class action.

In light of the foregoing, it is this 25th day of February, 1975,

Ordered:

1. That plaintiffs' motion for summary judgment be and the same is hereby denied;

2. That defendant's motion for summary judgment be and the same is hereby granted;

3. That defendant's motion to dissolve or amend this Court's July 10th order be and the same is hereby denied as moot; and

4. That plaintiffs' motion to maintain a class action be and the same is hereby denied.