Joanne D. RYAN et al.,
Plaintiffs-Appellees,

v.

Con F. SHEA, Executive Director of the Colorado Department of Social Services, et al., Defendants-Appellants.

Nos. 74–1517, 75–1095.

United States Court of Appeals,
Tenth Circuit.

Argued May 1, 1975.

Decided Oct. 30, 1975.

Brian Jeffrey, Colorado Rural Legal Services, and John R. Holland, Southwest Valley Legal Services, Denver, Colo. (Jon S. Nicholls and Tucker K.

Trautman, Legal Aid Society of Metropolitan Denver, Carolyn Lievers, East Denver Legal Services, and Betty L. Nordwind, Arapahoe County Legal Services, Denver, Colo., on the briefs), for plaintiffs-appellees.

Harry R. Silver, Atty., Dept. of Justice (Carla A. Hills, Asst. Atty. Gen., James L. Treece, U. S. Atty., Robert E. Kopp and David M. Cohen, Attys., Dept. of Justice, on the briefs), for defendants-appellants.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is a class action brought on behalf of individuals who began receiving Aid to the Needy Disabled benefits from the State of Colorado after July 1973, and were thereafter determined to be ineligible for benefits under the federal Supplemental Security Income program which supplanted Colorado's program for the needy disabled in January 1974. The district court entered a preliminary injunction which, among other things, enjoined the federal defendants from withholding benefits to the individual plaintiffs, and the members of the class, until they were given notice and an opportunity for an evidentiary hearing *prior* to any termination of such benefits. This preliminary injunction was later made permanent. In these two appeals which have been consolidated the federal defendants now appeal both the granting of the preliminary injunction and the order making such injunction permanent.[1]

In October 1972 Congress repealed the categorical assistance program (Title XIV of the Social Security Act) of federal grants to state-administered disability assistance programs. At the same time Congress established in Title XVI of the Social Security Act a program identified as Supplemental Security Income for Aged, Blind and Disabled (SSI) which was to become effective in January 1974. Under this program the federal govern-

ment was to administer the program and it assumed the burden of providing benefits to those needy persons who were disabled as defined in the Act.

As a part of the definition of disability, Congress included a "grandfather" clause whereby persons receiving disability benefits from a state program as of December 1973 would be conclusively presumed to meet federal standards. We would note parenthetically that this particular provision suggests that the federal program was in one sense, at least, a continuation of the old federal-state program. In any event, as indicated, in Colorado the state plan was called Aid to the Needy Disabled (AND).

Because of the conduct of certain states where persons of doubtful disability status were being switched from state welfare rolls to state disability rolls in anticipation of the federal take-over in January 1974, Congress, on December 31, 1973, modified the aforesaid grandfather clause to provide that in order to qualify for federal payments not only must the individual have received benefits in December 1973, but must also have received such state benefits for at least one month prior to July 1973. 42 U.S.C. § 1382c(a)(3)(E).

As indicated, then, on January 1, 1974, the federal government for all practical purposes took over the payments of benefits to the needy disabled. Those individuals who were receiving AND benefits from the State of Colorado as of December 1973, and who had also received AND benefits for at least one month *prior* to July 1, 1973, were conclusively presumed to meet federal standards and commenced to receive SSI benefits. The instant case is concerned with those individuals who were receiving state AND benefits in December 1973, but who had commenced receiving state AND benefits *after* July 1973.

The last minute amendment to the grandfather clause by Congress on December 31, 1973, caused many problems,

---

1. This action was brought against both federal defendants and state defendants, and the relief granted ran against both. The state defendants have not appealed.

not the least of which was the one cast on those who began receiving disability benefits between July 1, 1973, and December 31, 1973. Prior to the amendment a person receiving such benefits as of December 1973 was conclusively presumed to meet federal standards and thus entitled to SSI benefits. After the amendment a person receiving such benefits as of December 1973 was conclusively presumed to meet federal standards only if he had also been receiving these benefits for at least one month prior to July 1973. The problem facing the Secretary was what to do about those who commenced receiving benefits under a state plan between July and December 1973. In order to avoid possible harshness and to allow time in which to resolve obvious administrative difficulties, the Secretary under existing powers ordered that SSI benefits be paid to all persons who commenced receiving state benefits between July and December 1973 for a period up to three months upon a basis of so-called presumptive disability. 42 U.S.C. § 1383(a)(4)(B). It was apparently the hope, at least, that a determination of eligibility for continued SSI benefits could be made within that three-month period. When it became evident that such was not a sufficient time to process such cases, Congress, recognizing that the abrupt suspension of such benefits could indeed be harsh, provided that pending determination of eligibility under SSI, the Secretary could continue to pay presumptive benefits until the end of 1974. Pub.L. No. 93–256, § 1 (Mar. 28, 1974). The enactment made it clear, however, that once the Secretary determined that a person was not eligible for SSI benefits, the benefits based on presumptive disability would be immediately discontinued.

In Colorado, as elsewhere, the Secretary, in determining whether a person who commenced receiving state AND benefits after July 1, 1973, was eligible for federal SSI benefits, made his determination upon the basis of a *paper review* of the records maintained under the state's disability assistance program. If the Secretary determined from the paper review that a person was ineligible for federal SSI benefits, the presumptive benefits were terminated, and the individual was not given notice or afforded a hearing before such termination. However, following the initial determination of ineligibility, the individual was afforded an opportunity to a full rehearing on the question of eligibility, which included an evidentiary hearing. The heart of the present controversy is whether the individual plaintiffs, and the class they represent, all of whom commenced receiving state AND benefits after July 1, 1973, were entitled to notice and a hearing *before* the benefits they were receiving on the basis of presumptive disability could be terminated. Before reaching that issue we would first look at the jurisdictional issue raised by the federal defendant.

## I. JURISDICTION

The trial court found jurisdiction against the federal defendants under both 28 U.S.C. § 1361 (Mandamus) and 5 U.S.C. § 702 (Administrative Procedures Act). The federal defendants contend first that the trial court erred in finding subject matter jurisdiction. Counsel in effect concedes that under our relatively recent case of *Bard v. Seamans,* 507 F.2d 765 (10th Cir. 1974), the trial court did have jurisdiction under the Administrative Procedure Act. It is suggested that we now reexamine *Bard v. Seamans,* and reverse our position on the matter. This we decline to do.

Additionally, it would appear that there is jurisdiction under 28 U.S.C. § 1361. *See,* for example, *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir. 1973), where it was held that a federal district court had jurisdiction under § 1361 to grant injunctive relief against the Secretary of Health, Education and Welfare in order to prevent the termination of certain home health care benefits provided to the elderly under the Medicare program. *See also Knuckles v. Weinberger,* 511 F.2d 1221 (9th Cir. 1975), where the Ninth Circuit held that a fed-

eral district court had jurisdiction under § 1361 to grant mandamus relief and the court there enjoined the ex parte suspension of social security payments without affording proper notice and a prior evidentiary hearing. The foregoing authorities in our view indicate quite clearly that the federal district court in the instant case had jurisdiction under 28 U.S.C. § 1361.

The Secretary has by supplemental brief drawn our attention to the recent case of *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 announced June 26, 1975. Our reading of that case indicates to us that it does not control the present proceeding. *Salfi* was concerned with the denial of a claim for mother's and child's insurance benefits to surviving wives and stepchildren and it was in such setting that the Supreme Court held that the federal district court did not have jurisdiction under 28 U.S.C. § 1331, though it did have jurisdiction under 42 U.S.C. § 405(g). In the course of its opinion the Court indicated that § 405(g) was the exclusive method of reviewing such decisions of the Secretary. In the instant case we are not concerned with the denial of a claim as such, but with the determination by the Secretary to terminate disability benefits in an allegedly unconstitutional manner, i. e., without notice and hearing.

█ If the federal district court in the instant case did not have jurisdiction, then the plaintiffs are really without a remedy for their particular problem. Their only recourse would be to demand the evidentiary hearing to which they are entitled *after* the termination of benefits, and whether they were eventually granted benefits, or finally denied the benefits sought, in either event they would have lost their right to a determination as to whether they are entitled to a continuation of their presumptive benefits until afforded an evidentiary hearing *prior* to termination thereof. In sum, *Salfi* does not apply and 42 U.S.C. § 405(g) is certainly not in our view the

exclusive way to tackle the precise problem here sought to be raised.

We therefore conclude that the trial court had jurisdiction to entertain the present proceeding under 28 U.S.C. § 1361 and 5 U.S.C. § 702.

## II. MERITS

█ At issue here is the applicability of *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Goldberg,* the Supreme Court held that under the Due Process clause of the Fourteenth Amendment a state could not terminate public assistance payments to a recipient thereof unless the recipient was afforded an opportunity for an evidentiary hearing *prior* to such termination. The precise issue in the instant case is whether the "interest" of a person receiving SSI disability benefits on the basis of presumptive disability is such as to come within the protection of *Goldberg.*

It is the plaintiffs' contention that the interest they had in continued payments of benefits based on presumptive disability is of such nature as to come within the protection of the *Goldberg* rule. It is the Secretary's position that before the plaintiffs are entitled to notice and a pretermination hearing the plaintiffs must demonstrate a property interest in the presumptive disability benefit under the test of such cases as *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). It is the Secretary's further position that the plaintiffs demonstrated no such interest. Perhaps background facts on this particular matter should be more fully developed.

As indicated, it was the original intent of Congress that any person receiving benefits in December 1973 under a state program would automatically be grandfathered into the SSI program, which was to commence in January 1974. This congressional intent continued clear up until December 31, 1973, when Congress at the eleventh hour amended the earlier

grandfather clause by providing that there would be automatic grandfathering only if the individual had received benefits under a state program in December 1973 *and* had also received such benefits for at least one month prior to July 1973. This amendment preceded by one day the take-over by SSI. Needless to say the administrative difficulties posed by this last minute change were considerable.

In the meantime, for example, believing that anyone receiving AND benefits in December 1973 would be automatically grandfathered into the SSI program, the Colorado County Departments of Social Services had sent notices with AND benefits in November 1973, advising all AND recipients of the SSI program to go into effect in January 1974, and further advising them that they would be eligible for SSI benefits without the necessity of making an application therefor and that payments would come automatically. In December of 1973 a computer-prepared notice of eligibility for SSI was issued by the Social Security Administration and mailed to all Colorado residents for whom conversion data had been received. This notice advised that there need be no application to get SSI benefits; that a gold-colored United States Government check would come to the recipient automatically; that such check would replace the former payments received from the State or local public assistance office; and that if the federal check was less than the former payments, a public assistance office check would also be sent. The first mailing of SSI checks was on or about January 1, 1974. Included with each check was a notice identifying the gold-colored check as being an SSI check and advising the recipient that such check would be received around the first day of each month "as long as you are eligible."

To aid in the conversion to SSI program, the Social Security Administration contracted with a state agency, namely, the Colorado Disability Determination Unit (DDU), which agency began mailing notices on or about May 16, 1974, to all individuals who had begun to receive AND benefits after July 1973 and advised them of the change in the law relative to so-called "roll back" cases. That notice contains the following:

> The agency in your State which works with us in making disability determinations or a Social Security district office may be in touch with you if additional information is needed to make a new disability decision in your case. You are not required to do anything further unless you hear from one of these offices.

> Under a special provision of the law, payments will be made while we are reviewing your case even though you have not yet been found disabled. If it is found that you are disabled as defined by Federal law, you will continue to receive supplemental security income checks. If you are not disabled as defined by law, you will no longer receive these checks. You will be notified as soon as we reach a decision in your case. We want to assure you that this review will be completed as promptly as possible.

After an unfavorable disability determination had been made, a notice of ineligibility would be mailed by DDU, and the receipt of such determination by the recipient of SSI benefits would apparently be the first indication to him that his SSI benefits were in real jeopardy. In any event the notice contained the following language on the front page:

> After a careful review of your case, we have found that you are not eligible to receive supplemental security income payments under the provisions of Title XVI of the Social Security Act.

> Under the law, because you had received a disability payment for December 1973 from a State or local public assistance agency, we have been able to send you supplemental security income payments (in a gold-colored check), but only until a decision about your eligibility could be made.

To receive any more checks, the law requires that:

1. You must have received a check for at least one month before July 1973 from a State or local public assistance office. These checks must have been paid because of a disability. (Checks paid to a family with dependent children do not meet this requirement); or

2. You must be disabled as defined under the Federal law. This means you must be unable to do any substantial gainful work because of a medical condition which has lasted or will last for at least 12 months.

We have carefully reviewed the evidence in your case and find that you do not meet either of there requirements. Because of this, we cannot send you any more supplemental security income checks.

An agency of your State will inform you of any change in your status for medical assistance (Medicaid) caused by this action. You may want to contact your State or local public assistance office for further information.

■ It was in this general factual setting that the trial court held that under the *Goldberg* rule the interest of the plaintiffs in the disability benefits made on the basis of presumptive disability was such as to require notice and an evidentiary hearing prior to termination of such benefits. We agree. Assuming, arguendo, that in the first instance the Secretary could have flatly refused to pay any SSI benefits to a person who commenced receiving State AND benefits after July 1, 1973, and could have compelled such person to wait until his records were reviewed and he was found to be eligible under federal standards, the fact remains that such route was not followed. Rather, the Secretary, acting under what was believed to be his then existing powers, determined that a person who commenced receiving State AND benefits after July 1, 1973, would be deemed presumptively disabled and would receive SSI payments in place of the AND benefits which he had been receiving until a determination as to eli-

gibility under federal standards was finally made. This policy of the Secretary was shortly thereafter approved and given formal recognition by Congress. In such circumstance we hold that these plaintiffs and the class they represent have a sufficient interest to require notice and a pretermination hearing under the rule of *Goldberg.*

The precise matter here at hand has been the subject matter of considerable litigation in the federal district courts. By their supplemental brief the plaintiffs advise that out of nineteen district courts considering the matter, seventeen, including the district court in the instant case, have granted relief. Most of these decisions have not been published, and the opinion of the trial court in the instant case was not published. Two decisions that have been published are *Buckles v. Weinberger,* 387 F.Supp. 328 (E.D. Pa.1974), and *Brown v. Weinberger,* 382 F.Supp. 1092 (D.Md.1974). In *Brown,* Judge Alexander Harvey made extended comment concerning both the jurisdictional issue and the merits of the dispute. We find his reasoning persuasive, and note that the trial judge's approach in the instant case closely parallels that of Judge Harvey. On appeal *Brown* was affirmed per curiam by the Fourth Circuit on the basis of Judge Harvey's reasoning. 529 F.2d 514 (4th Cir. 1975), decided September 19, 1975. We hold that the sanctions of *Goldberg* apply to the instant case.

The Secretary also suggests that even assuming some property interest in the receipt of SSI benefits on the basis of presumptive disability, such interest necessarily ended on December 31, 1974, because Public Law 93–256 barred continued payments of such benefits into 1975. That is not our understanding of Public Law 93–256. Furthermore, it apparently was not the view of the Commissioner of Social Security, James B. Caldwell, who, we are advised, wrote on December 2, 1974, the Chairman of the House Committee on Ways and Means that the agency intended to continue making SSI payments after December 31, 1974, to all

individuals whose eligibility under federal criteria had not as yet been made. The Commissioner did not view Public Law 93–256 to be an absolute bar to such continued payments of presumptive benefits, nor do we.

## III. CLASS ACTION

The trial court held that this was a proper class action under Fed.R.Civ.P. 23(b)(2) and specifically found, inter alia, that "the representative parties will fairly and adequately protect the interest of the class." The trial court additionally concluded that "because the class is formed pursuant to Fed.R.Civ.P. 23(b)(2) no notice to the members of the class is required." So far as the record before us is concerned the federal defendants made no objection to this ruling that because the class was formed under 23(b)(2), and not 23(b)(3), no prejudgment notice was required. The trial court then proceeded to issue a preliminary injunction, which injunction was made permanent some five months later, with the Secretary never making any objection to the lack of notice to the class members. In this court, though, the federal defendants contend that the trial court erred in not ordering prejudgment notice, citing such cases as *Schrader v. Selective Service System,* 470 F.2d 73 (7th Cir. 1972); *Zeilstra v. Tarr,* 466 F.2d 111 (6th Cir. 1972); and *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968).

As indicated, the class was formed under 23(b)(2). That particular section of the rule provides as follows:

   \* \* \* [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; \* \* \*.

The instant case would appear to be well within the ambit of 23(b)(2) and, as we understand it, the federal defendants do not take exception to this particular determination. Rather, the federal defendants here contend that the trial court erred in not requiring prejudgment notice to the class, although, as indicated, the federal defendants never raised this point in the trial court.

Although exceptions are no longer necessary under Fed.R.Civ.P. 46, that rule does require that at the time a ruling or order of the court is made to which a party objects, the party must make known to the court the action which he desires the court to take or his objection to the action of the court. And a corollary of that rule is that a matter not thus raised in the trial court will not be considered on appeal. 5A Moore's Federal Practice ¶ 46.02, 1902–09 (2d ed. revised 1975). *See also Baker v. Sherwood Construction Company,* 409 F.2d 194 (10th Cir. 1969).

■ Under the circumstances we are disinclined to here consider on its merits the argument first advanced in this court that the trial court erred in failing to require prejudgment notice to members of the class. We are not impressed with the argument advanced here by the Secretary that the members of the class were given "two bites at the apple," i. e., if the plaintiffs in the instant case had lost, the members of the class could have instituted their own action. On the contrary, to reverse this judgment at this time on a ground never advanced in the trial court would in reality give the Secretary two bites at the apple.

■ On the merits of the matter we simply note that district courts in this circuit have ruled that in a class action brought under 23(b)(2) prejudgment notice is not required. *Citizens Environmental Council v. Volpe,* 364 F.Supp. 286 (D.Kan.1973), *affirmed,* 484 F.2d 870 (10th Cir. 1973), and *Northern Natural Gas Company v. Grounds,* 292 F.Supp. 619 (D.Kan.1968), *affirmed,* 441 F.2d 704 (10th Cir. 1971). In each instance the matter of prejudgment notice was not an issue on appeal.

Judgment affirmed.